893 F.2d 1334
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard Lee JOHNSON, Plaintiff-Appellant,
v.
Robert MANDENBERG, Janice Trudell and William Aalto,
Defendants-Appellees.
 No. 88-1616.
 United States Court of Appeals, Sixth Circuit.
 Jan. 22, 1990.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and THOMAS A. WISEMAN, Chief District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Richard L. Johnson, an inmate at a prison operated by the State of Michigan, was charged with falsely accusing a guard of racial harassment. After a hearing, a member of the state's corps of professional hearing officers determined that the misconduct charge against Mr. Johnson was well founded. On the basis of the hearing officer's finding, Mr. Johnson received a 20-day loss of privileges.
 
 
 2
 Mr. Johnson then brought a federal court suit against the hearing officer, the guard who initiated the misconduct charge, and a "reviewing officer" who conducted a pre-hearing investigation. Each of the defendants was accused of having subjected Mr. Johnson to a deprivation of his constitutional rights in violation of 42 U.S.C. Sec. 1983.
 
 
 3
 The district court entered summary judgment in favor of the defendants. The court found (a) that the prison officials had complied with the due process requirements spelled out in Wolff v. McDonald, 418 U.S. 539 (1974), and (b) that there had been no impermissible abridgment of the First Amendment rights explicated in Wolfel v. Bates, 707 F.2d 932 (6th Cir.1983). We agree, and we are satisfied that the defendants in this case are not subject to suit under Sec. 1983 in any event.
 
 
 4
 * On or about November 3, 1986, according to his complaint, Mr. Johnson overheard parts of a conversation between a prisoner named Reggie Tensley and Corrections Officer Janice Trudell. Mr. Johnson heard Officer Trudell use the word "nigger" at one point, the complaint avers, but the complaint says Mr. Johnson could not tell the context in which the word was spoken.
 
 
 5
 A few days later, the complaint continues, Reggie Tensley asked the prisoners in his cell block if "anyone heard Officer Trudell call him a nigger the other day." Despite the fact that he did not know the context in which the racial epithet had been used, Mr. Johnson responded in the affirmative. Two other prisoners did also. Tensley then said "I got to file a grievance on her[,] will anybody sign as a witness[?]" Mr. Johnson agreed to do so; as he subsequently explained, "I signed a paper that said if you wish to be a witness sign below, so I signed it."
 
 
 6
 The paper that Mr. Johnson admitted to signing was a single sheet bearing the signatures of three persons as "witnesses to this matter." The page in question had no explanation of what "this matter" might be. But in a separate grievance form--a document that also bears a signature purporting to be Mr. Johnson's--Mr. Tensley alleged, among other things, that Officer Trudell "call[ed] me a nigger eye-to-eye." Mr. Johnson subsequently claimed that his signature on Mr. Tensley's grievance was a forgery; the hearing officer found otherwise.
 
 
 7
 In her response to Mr. Tensley's grievance, Officer Trudell denied having used the racial epithet. She also said that while she and another officer were escorting Mr. Tensley to the prison's law library, Mr. Tensley told her he was filing a "real good grievance" on her, and he said that "this time I have all of my lies straight." The second officer confirmed to an investigating official that Mr. Tensley had indeed boasted of having "all of his lies straight."
 
 
 8
 After interviewing Mr. Tensley, Officer Trudell, and the second officer, the investigating official came to the following conclusion:
 
 
 9
 "I see no reason to believe that Officer Trudell acted in any manner other than professional. It is my belief also that Tensley wrote this grievance solely to harass Officer Trudell or, at the least, to cause her to have to speak to him."
 
 
 10
 Following the denial of Mr. Tensley's grievance, Officer Trudell filed a misconduct report against Mr. Johnson. The report made the following charge:
 
 
 11
 "The above named prisoner has signed a paper stating he is a witness to a matter being grieved by prisoner Tensley, 176206. This grievance makes false accusations of racial discrimination and harassment against me such that they could result in disciplinary action being initiated against me."
 
 
 12
 The misconduct report thus alleged a violation of a prison rule that prohibits "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners," and cites as an example "making false accusations of misconduct against another prisoner [or] staff which would ordinarily result in disciplinary action being initiated against the person."
 
 
 13
 In accordance with established prison procedures, the misconduct report was investigated by a "reviewing officer," Sgt. William Aalto. Sgt. Aalto spoke with Mr. Johnson, who maintained there was nothing "false" about the accusation against Officer Trudell: "Resident [Johnson] states he heard Officer Trudell call Tensley a nigger. He could plainly hear it."
 
 
 14
 Sgt. Aalto's investigation was followed by a formal hearing before Robert D. Mandenberg, an attorney serving as a full-time hearing officer under M.C.L. Secs. 791.251-55. The story that Mr. Johnson gave Hearing Officer Mandenberg differed significantly from the version reported by Sgt. Aalto; what Johnson told the hearing officer, as the latter summarized it, was that Johnson "heard the word 'nigger' used by officer, can't recall exactly when, and doesn't know exactly what context word used in; says [misconduct] ticket is a recrimination for the grievance and to harass the witnesses." (Misspellings corrected.)
 
 
 15
 Hearing Officer Mandenberg resolved all factual questions against Mr. Johnson. The hearing officer found that Johnson "signed his name as a witness on the front page of the [Tensley] grievance," and "thereby made a false statement and accusation against the officer in a grievance which could possibly result in disciplinary action against the officer." These findings of misconduct on Mr. Johnson's part resulted in his suffering a loss of privileges between December 11 and December 31, 1986.
 
 
 16
 On February 5, 1987, Mr. Johnson filed a Sec. 1983 action in the United States District Court for the Western District of Michigan. Named as defendants were Robert D. Mandenberg, Hearing Officer for the Michigan Department of Corrections; Janet Trudell, Clock no. 275, Prison Guard at Marquette Branch Prison; and William Aalto, Clock no. 197, Prison Guard at Marquette Branch Prison.
 
 
 17
 The defendants moved for dismissal. Mr. Johnson filed a number of documents in response, and the case was referred to a magistrate. Although the magistrate concluded that there was no constitutional defect in the procedure followed by the defendants, he recommended that the motion for dismissal be denied. It was the magistrate's theory that under Wolfel v. Bates, 707 F.2d 932 (6th Cir.1983), Mr. Johnson's First Amendment rights would have been violated whether or not the statement Johnson made about Officer Trudell was false, absent an express finding that the statement had not been made "maliciously." (The hearing officer, as the magistrate noted, found that Johnson's statement was false, but made no finding as to malice.)
 
 
 18
 The district court accepted the magistrate's recommendation on the due process claim.[1] As to the First Amendment claim, however, the district court did not read Wolfel v. Bates as teaching that the hearing officer had to find that Mr. Johnson's statement had been made "maliciously" as well as falsely; "the hearings officer's conclusion that plaintiff's statement was false when signing his name as a witness on a grievance was sufficient," in the district court's view. The court entered summary judgment for the defendants, and this appeal followed.
 
 II
 
 19
 Whether Mr. Johnson's false statement was malicious or not, we think the case law makes it clear that Mr. Johnson has no viable claim against any of the three defendants under Sec. 1983.
 
 
 20
 A legal action against a state official in his or her official capacity is tantamount to an action against the state itself--and Sec. 1983 was not intended to authorize damage actions against the state. Will v. Michigan Dept. of State Police, 491 U.S. ---, 109 S.Ct. 2304, 105 L.Ed. 45 (1989). If the defendants in this case were sued solely in their official capacities, therefore, the defendants were entitled to judgment as a matter of law.
 
 
 21
 Turning first to Hearing Officer Mandenberg, we find that the section of the complaint dealing with Mr. Mandenberg specifically avers that he and the other defendants "were acting in their official capacities." There is no suggestion in the complaint that Mr. Mandenberg was being sued in an individual capacity.
 
 
 22
 Adopting the interpretation of Will announced in Nix v. Norman, 879 F.2d 429 (8th Cir.1989), this circuit recently held that the decision in Will "requires that plaintiffs seeking damages under Sec. 1983 set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." Wells v. Brown, --- F.2d ----, ---- (6th Cir.1989). Like the complaint in Wells v. Brown, Mr. Johnson's complaint does not meet this test.
 
 
 23
 Even if Hearing Officer Mandenberg had been sued in his individual capacity, moreover, the claim against him would have to be dismissed on the merits. The essence of the claim is that the hearing officer got his findings wrong. Where a hearing officer in the Michigan prison system makes findings that are claimed to be erroneous, the hearing officer is no more subject to liability on that account than a judge would be. Shelly v. Johnson, 849 F.2d 228 (6th Cir.1988). Under Michigan law, as Chief District Judge Douglas Hillman explained in a published decision adopted by this court in Shelly,
 
 
 24
 "the Michigan prison hearing officer is an attorney especially appointed to conduct prison disciplinary hearings as a full time judicial officer, wholly independent of the warden and other prison officials in the prison in which he conducts his hearings. He is guided by strict statutory procedural rules and his decision is subject to appellate review in the Michigan courts. His role for all practical purposes is similar to that of an administrative law judge and as such he should be entitled to absolute judicial immunity for the very reasons recognized by the court in Butz v. Economou, supra, 438 U.S. at 508-514 [98 S.Ct. at 2911-2915.]" Shelly v. Johnson, 684 F.Supp. 941, 943 (W.D.Mich.1987), as quoted at 849 F.2d 230.
 
 
 25
 If Mr. Johnson was dissatisfied with Hearing Officer Mandenberg's findings, his remedy lay in an appeal to the Michigan courts, not an action under Sec. 1983.
 
 
 26
 As far as Sgt. Aalto is concerned, the complaint alleges that "while acting under color of state law in his capacity of a[n] alleged misconduct reviewing officer," Aalto allowed the misconduct proceeding to go forward when he ought to have stopped it summarily. (Emphasis supplied.) Sgt. Aalto was sued in his official capacity and only in that capacity.
 
 
 27
 Like Sgt. Aalto, Officer Trudell was joined as a defendant in her capacity as a "Prison Guard." The complaint does not assert that she was being sued in an individual capacity.
 
 
 28
 The complaint does, to be sure, allege that Officer Trudell prepared and signed the misconduct report in disregard of prison guidelines which suggested that only in "very narrow areas" is it permissible to charge prisoners with misconduct for making false accusations against staff members. That allegation does not, in our view, "set forth clearly," as required by Wells v. Brown, that the officer was being sued in an individual capacity. In determining whether the situation confronting her did or did not justify the bringing of misconduct charges, moreover, Officer Trudell was presumably acting in her official capacity unless her determination was tainted by some improper motive. Absent any factual basis for imputing such a motive to her, we think the logical reading of the complaint would be that Officer Trudell was acting in an official capacity in preparing and signing the misconduct report even if it should be found that she erred in her determination that the submission of such a report was permissible.[2] (There has been no finding that she did err of course, and we do not mean to suggest that she did.)
 
 
 29
 Mr. Johnson's complaint also alleges that Officer Trudell either forged Johnson's signature to the Tensley grievance or conspired with some unnamed person or persons who forged the signature. Forgery would bespeak purely personal conduct, of course, as opposed to action in an official capacity. As we have seen, however, Mr. Johnson failed to persuade the hearing officer that there had been any forgery. The hearing officer's findings, which were reviewable in the Michigan courts, are not subject to collateral attack here. And Mr. Johnson made no other factual allegations suggesting that Officer Trudell was being sued other than in an official capacity within the meaning of Will.
 
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Chief Judge of the United States District Court for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Mr. Johnson has not seriously challenged the magistrate's conclusion that the procedural aspects of the prison's disciplinary system pass constitutional muster under the Fourteenth Amendment
 
 
 [2]
 The magistrate expressed the belief that "prison officials should be very careful before disciplining inmates for documents filed with the courts or in support of grievances." We agree. Ms. Trudell obviously has a difficult job, however, and her ability to perform that job is not going to be helped if prisoners can make false charges against her with impunity. It behooves us to be very careful about second-guessing her judgment on instituting disciplinary proceedings in a case such as this
 "[P]rison administrators possess considerable discretion in the regulation of internal institutional affairs," Wolfel v. Bates, 707 F.2d at 933-34, and the Wolfel panel saw no constitutional infirmity in an Ohio prison rule that permitted prisoners to be reprimanded for "making unfounded complaints or charges against staff members of the institution with malicious intent." The plaintiff in Wolfel, a prisoner at the Southern Ohio Correctional Facility, drafted and circulated a petition charging prison guards with harassing inmates. The Wolfel defendants punished the plaintiff without determining either that the statements in the petition were false or that they were circulated maliciously. In effect, as the panel said, the plaintiff was "subjected to discipline merely because he complained," and "[t]his was an impermissible abridgment of his right to seek redress of grievances." Id. at 934. In the case at bar, by contrast, it is clear that the plaintiff was not subjected to discipline merely because he complained; he was subjected to discipline because, as the hearing officer found, he violated prison rules by making a false statement about Officer Trudell so serious in nature that it could have resulted in disciplinary action against her.