Joann **CLARK, Individually and Joann Clark, Administratrix of the Estate of James W. Clark, Deceased and Liberty Mutual Insurance Company, Appellants,**

v.

**HAUCK MANUFACTURING COMPANY, Appellee.**

**HAUCK MANUFACTURING COMPANY, Appellant,**

v.

**AIRCO CARBIDE, Appellee.**

Nos. 93–SC–253–DG, 94–SC–957–DG.

Supreme Court of Kentucky.

Nov. 22, 1995.

Kenneth H. Baker, James Scroghan, William W. Lawrence, Louisville, for Joann Clark.

Thomas W. Speckman, Speckman & Hoback, Louisville, for Liberty Mutual Insurance.

Robert Michael Connolly, Louisville, Scot A. Duvall, Stites & Harbison, Louisville, for Hauck Manufacturing.

Charles S. Cassis, Steven M. Crawford, Colin H. Lindsay, Brown Todd & Heyburn, Louisville, for Airco Carbide.

WINTERSHEIMER, Justice.

This appeal is from a jury verdict in favor of the defendant, Hauck Manufacturing Company, in a products liability and wrongful death action.

On appeal, the original plaintiff, Joann Clark, claims that her deceased husband was injured and died as a result of an allegedly defective product designed and manufactured by Hauck Manufacturing Company. The Court of Appeals affirmed the jury verdict in favor of Hauck. On cross-appeal, Hauck appeals from the judgment of the trial court which granted Clark's employer, Airco Carbide, a summary judgment on the Hauck claim for indemnity. Pursuant to its affirmance of the verdict in favor of Hauck, the Court of Appeals dismissed as moot the appeal by Hauck of its indemnity claim against Airco.

James W. Clark was employed by Airco Carbide, Inc. His job duties included handling an oil-fired, hand-held torch used to break up frozen coal. Clark was using the torch on the day of the accident. His widow and administratrix claims that the flame blew out of the torch causing a mist of oil to spew from the torch and cover Mr. Clark. The oil then reignited and Mr. Clark suffered third-degree burns over 70 percent of his body. He died 49 days after the accident having never left the hospital. His medical treatment was so extensive that the bills amounted to approximately $205,000. Joann Clark claims that the torch was manufactured by Hauck and that Hauck defectively designed the torch or that Hauck had failed to adequately warn of a foreseeable misuse.

Ten issues are raised both on direct appeal and cross-appeal by the parties. The principal issue is that the trial judge committed reversible error in instructing the jury that the torch had to be defective *and* have inadequate warnings in order for the plaintiff to recover, rather than instructing that a finding of either a defective product *or* inadequate warning was sufficient to sustain a verdict for the plaintiffs.

The Court of Appeals addressed the principal issue in regard to the giving of a jury instruction and affirmed in a two to one decision. The Court of Appeals addressed all the issues raised. This Court has considered all the issues presented and will discuss only those necessary to reach this decision.

## Strict Liability Instruction

The major issue in this case is the instruction question. The question is whether a plaintiff must prove that a product is both defective and has inadequate warnings. The trial judge used "and" in the instructions. Clark argues that this was reversible error because plaintiffs are allowed to recover in product liability cases under very different theories such as defective design, defective manufacture or failure to warn. Each theory is different and therefore independent of the other. In this case, the jury should have been allowed to find either that the torch was defectively designed or that the design was adequate but that the torch was unreasonably dangerous because the manufacturer failed to warn of a foreseeable misuse.

A party plaintiff is entitled to have their theory of the case submitted to the jury if there is any evidence to sustain it. *Risen v. Pierce*, Ky., 807 S.W.2d 945 (1991). Liability may be imposed on the manufacturer of a defective product under a variety of theories. Liability may result from defective design; *Jones v. Hutchinson Mfg., Inc.*, Ky., 502 S.W.2d 66 (1973); *Nichols v. Union Underwear Co., Inc.*, Ky., 602 S.W.2d 429 (1980); for manufacturing defects, *Ulrich v. Kasco Abrasives Co.*, Ky., 532 S.W.2d 197 (1976); and for failure to warn, *Post v. American Cleaning Equipment Corp.*, Ky., 437 S.W.2d 516 (1968).

However, in this case, the Court of Appeals determined that because no one knew for certain whether Clark was using the torch without the cone, or even that Clark was using Hauck equipment, and that no one could say how the accident occurred, the instructions were adequate to present the Clark case to the jury. The Court of Appeals noted that the instructions as given embodied those set out in Palmore, *Kentucky Instructions to Juries*, § 49.02, Vol. 2, 4th Edition (1989) and that *Post v. American Cleaning Equipment Corp., supra*, approved such instructions on the alternative duties to provide adequate warnings or to design so as to prevent the type of incident which occurred. We disagree.

The estate maintains that on the day in question, the torch was operated without the

nose cone. The cone on this design can be easily removed as it is held by only three screws. The estate contends that without the nose cone on the end, a strong wind can blow out the flame. This problem has been noted by engineers for Airco. The estate contends that the torch was defectively designed in that the nose cone could have been removed so easily and that the manufacturer should have foreseen the removal of the nose cone for a number of reasons. By the time the suit was filed, the torch in question had been disposed of by the employer. By way of defense, the manufacturer maintains that it could not be proven that it was its torch which was used on the day of the accident.

■ The evidence in the record indicates that there were two of the torches in operation at the time and place of the accident. These torches were the only source of open flame. The decedent had no oil on his clothes moments before the accident and the decedent stated that the fuel oil was sprayed on him by the torch. He said this immediately after the accident to his co-workers who came to his aid and to emergency medical personnel who gave him immediate treatment. The evidence indicates that the decedent was covered with fuel oil and smelled of burned fuel oil after the accident. The nose cone was missing from the torch at the time of the accident. The evidence also indicates that the torch would sometimes blow out creating a highly flammable oil mist.

■ The manner in which the jury was instructed could have led the jurors to believe that the warnings were totally inadequate and the jury would still have been required to find for the defendant. This is not the law pursuant to *Post, supra.* In this case, the jury instructions were erroneous and prejudicial and resulted in reversible error. There was ample evidence within the record of a defective condition that caused the injury. In a products liability case, a plaintiff may recover in a number of ways, such as under a theory of defective design, defective manufacture or failure to warn. A plaintiff need only prove one. Consequently, the trial judge committed reversible error by using "and" instead of "or" in the instructions. This improperly linked two distinct theories of recovery. Thus, the burden of proof was misstated. Under a proper instruction, the jury could have found for the plaintiff.

■ It should be noted that the holding in *Ingersoll–Rand Co. v. Rice,* Ky.App., 775 S.W.2d 924 (1988), reaches the conclusion that a plaintiff is not entitled to a separate warning instruction. However, this holding is contrary to a basic tenet of Kentucky law, to-wit: that a party is entitled to a jury instruction in every duty supported by the facts entered into by the evidence, whether that duty is a common law duty or a statutory duty. *Risen v. Pierce,* Ky., 807 S.W.2d 945 (1991).

The majority of the Court of Appeals panel was mistaken when they specifically stated that they were relying on the treatise of Palmore, *supra,* § 49.02 in regard to its criticism of the holding of *Ingersoll–Rand, supra.*

## Negligence Instruction

■ The duty of ordinary care embraces such questions as the duty of the manufacturer to review design and if he knew or should have known that his design was defective to make an effort to notify the purchasers of his equipment of these findings subsequent to the sale of the product. In this case, this would have been easy to accomplish because the manufacturer sold the product directly to Airco.

Our review of the evidence in the record convinces us that it was reversible error not to give an instruction on both strict liability and ordinary care. The evidence supported such a request for separate instructions.

## Spontaneous Statements

The trial judge committed reversible error in sustaining the objections to the testimony of emergency medical technicians and the emergency room physician regarding the spontaneous statements made by the decedent Clark shortly after he sustained the burns which ultimately resulted in his death. The statements made by the victim were withheld from the jury and the trial judge would not permit the questions to be asked in open court.

The injuries in question occurred at approximately 9:00 P.M. on December 29, 1983. According to EMS personnel, they received notice of the injury at approximately 9:04 P.M. and arrived at the scene at approximately 9:11 P.M. Although there was some dispute as to the time of arrival, it is clear from the record that EMS personnel arrived on the scene between 7 and 11 minutes after the accident. The statements were offered by the plaintiffs both as spontaneous statements and as statements elicited by medical personnel in the course of determining both the diagnosis and the treatment of the victim. It is abundantly clear from the evidence that the statements made by the decedent to the EMS personnel and the emergency room physician related to the startling event which resulted in the serious burns sustained by him. They consisted of testimony that would have been competent evidence if presented as testimony by the declarant if he had survived. The only question raised by the trial judge concerning the admissibility of the statements had to do with the spontaneity of them.

Here, because of the nature of the incident, there was no opportunity or any likelihood of fabrication, and there was no inducement to the victim to fabricate the statement that he made. It is clear in this case that any individual who was as badly burned as the victim was at the time that he was making the statements made them as a result of a highly agitated state of mind based on what he saw happen to him and not based on any reflection or deliberations. The victim had sustained serious burns that eventually proved fatal and there is no way that he could have been able to reflect or deliberate on the significance of any of his statements. *See* R. Lawson, *Kentucky Evidence Law Handbook* § 8.60 and *Honaker v. Crutchfield,* 247 Ky. 495, 57 S.W.2d 502 (1933).

In this case, at the time of the declaration, the victim was in a highly nervous and agitated state and there was no basis for him to know that his statement could be thought of as self-serving or detrimental to any claim he or his estate might later bring. *See also* KRE 803(2).

Seeing your clothing on fire and being burned to the third degree over 70 percent of your body is certainly an exciting event which would belie any attempt at fabrication. Under the former rules of evidence the statements should have been admitted as excited utterances.

### Loss of Consortium

Although the Court of Appeals did not need to consider the question of loss of consortium beyond the death of the decedent, we believe it has no merit in this case.

The estate sought damages for loss of consortium extending beyond the date of death. Kentucky law does not recognize such a claim. *Brooks v. Burkeen,* Ky., 549 S.W.2d 91 (1977). A claim for loss of consortium is viable only for the period of time between the date of injury and the date of death. It does not reach beyond.

The loss of consortium claim is personal to the surviving spouse. The purpose is to compensate for that period of time while the injured spouse was still alive but incapable of fully participating with the other spouse in conjugal relations attendant to the marital status. To extend the damages for loss of consortium beyond the date of death would result in a double recovery for the surviving spouse beyond that which the wrongful death statute affords. This was never available under the common law. KRS 411.130.

In addition, it should be noted that the loss of consortium claim was filed untimely in this case. It was filed within a year of the decedent's death, but over a year after the date of his injury. We do not believe that KRS 413.180 provides the opportunity to extend the statute of limitations in this case. *Conner v. George W. Whitesides Co.,* Ky., 834 S.W.2d 652 (1992), does not apply because a claim for loss of consortium is not based on a wrongful death as it was in *Conner, supra,* rather it is based on the loss of consortium up to the point of death.

### Indemnity

This Court affirms the judgment of the trial court insofar as it relates to the

claim by Hauck for indemnity. Hauck did not properly preserve for appellate review any of the issues it now raises on appeal as to the indemnity claim against Airco Carbide. Indemnity is not an issue until fault has been determined.

 As a matter of law, Airco cannot be liable for indemnity to Hauck. Hauck's own expert witnesses admitted that Airco's · actions did not cause the accident which is the basis of this claim.

 There can be no indemnity without liability. *Crime Fighters Patrol v. Hiles,* Ky., 740 S.W.2d 936 (1987). *See also Restatement (Second) of Torts* § 886B (1991).

### Apportionment

We further affirm the decision of the Court of Appeals in regard to apportionment between the manufacturer and the employer. The argument that the holding in *Dix & Associates v. Key,* Ky., 799 S.W.2d 24 (1990) and KRS 411.182 violates Sections 7, 14, 54 and 241 of the Kentucky Constitution is not ripe. Apportionment only becomes important if individual parties are found liable. Thus the case at this stage is not an appropriate vehicle in which to re-examine *Dix* or to test the constitutionality of the apportionment statute.

### Expert Testimony

 We affirm that portion of the Court of Appeals decision which holds that it was not reversible error to refuse to allow the plaintiff's expert, Professor Cole, to give his opinion as to whether the torch was unreasonably dangerous and defective. We do not believe the trial judge abused his discretion in excluding it. The Court of Appeals also correctly determined, after viewing the videotape, that the trial court did not abuse its discretion in excluding it because the operation of the torch could be adequately explained to the jury without the use of the videotape and the possibility of confusion was too great.

### Photographs of the Deceased

· We also affirm the decision of the Court of Appeals in regard to the refusal of the trial judge to permit photographs of the deceased to be admitted as evidence of pain and suffering. There was ample evidence as to pain and suffering presented to the jury through the deposition testimony of Dr. Scherm and through the medical records of the victim's hospitalization. In this instance it was not error to exclude the photographs. It should be understood that merely because photographs are gruesome or revolting, they should not be inherently excluded. *Cf. Clark v. Commonwealth,* Ky., 833 S.W.2d 793 (1991).

It is the holding of this Court that the trial judge committed reversible error in instructing the jury that the torch had to be defective and have inadequate warnings in order for the plaintiff to recover rather than instructing the jury that a finding of either a defective product *or* inadequate warning was sufficient to sustain a verdict for the plaintiff. We also hold that the trial judge committed reversible error in refusing to instruct the jury based on negligence in addition to a strict liability instruction and that it was error to sustain objections to the testimony of EMS technicians and the emergency room physician regarding spontaneous statements made by the victim shortly after he sustained the burns.

Additionally, Clark argues that the Court of Appeals erred in affirming the case based upon the issue of insufficient evidence that was decided adversely to the defendant in the circuit court and which was not preserved by a cross-appeal. However, this issue need not be addressed in the opinion in light of the Supreme Court's reversal on other grounds.

The decision of the Court of Appeals is reversed in part and affirmed in part, and this matter is remanded to the trial court for a new trial consistent with this opinion.

STEPHENS, C.J., FUQUA and LAMBERT, JJ., LEVIN, Special Justice, and REYNOLDS and STUMBO, JJ., concur.

LEIBSON, J., not sitting.