Wanda Ruth HILL, Individually, and as Administratrix of the Estate of Roy Lee Hill, Plaintiff,

v.

R.J. REYNOLDS TOBACCO CO., Defendant.

Civil Action No. 3:98–CV–548–H.

United States District Court, W.D. Kentucky, Louisville Division.

April 2, 1999.

J. Michael Poole, Bruce Garrett Anderson, Ed Monarch, Holly Houston, J. Michael Poole & Associates, Louisville, KY, for plaintiff.

W. Kennedy Simpson, Stites & Harbison, Louisville, KY, Jeffrey J. Jones, J. Todd Kennard, Jones, Day, Reavis & Pogue, Columbus, OH, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Wanda Ruth Hill alleges that her late-husband Roy Lee Hill died from chronic obstructive pulmonary disease caused by smoking two packages of Winston or Salem cigarettes every day from 1959 until his death in 1996. Hill's original complaint asserted claims of negligence and strict liability along with a claim under Kentucky's Consumer Protection Act. After Reynolds moved the Court to dismiss that complaint, Hill moved to amend her complaint—actually to replace it with an entirely new complaint—raising claims of actual and constructive fraud, conspiracy to commit fraud, and strict product liability. Reynolds opposes the amended complaint as futile, claiming that the Court should reject it for many of the same reasons argued in the motion to dismiss the original complaint.

The interests of justice permit the proposed amendment primarily because the parties have only just begun to litigate this case. Little or no prejudice flows from allowing the amendment. The Court sustains Hill's motion for an amendment without diminishing Defendant's right to file further motions. The Court will treat Reynolds opposition to the proposed amendment as a motion to dismiss.

Reynolds attacks Hill's case on two legal fronts. First, Reynolds explains that the Federal Cigarette Labeling and Advertising Act of 1965 ("1965 Act") and the Public Health Cigarette Smoking Act of 1969 ("1969 Act") bar Hill's Kentucky law claims. Second, Reynolds contends that the common knowledge doctrine blocks Hill's product liability claims and her fraud theory. Though the Court will dismiss only those claims preempted by the 1969 Act, other parts of Plaintiff's claims may be vulnerable on summary judgment.

No doubt these following words will be but the first of many exploring the legal issues raised by this and other similar cases. Many unanswered questions remain. The actual evidence will answer a number of them. Other issues may generate even more heated debate because Kentucky products liability law is not always clear; because overlaying that law with federal preemption constructs does not always produce a seamless result; and because standard products liability concepts seldom apply neatly to cases of such a broad scope as this one.

I.

The Court must first determine how much of Plaintiff's complaint is preempted by either the 1965 or the 1969 Acts. Preemption hinges on the application of *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), in which the Supreme Court explained the effect of the 1969 Act. The Court concluded that the federal legislation impliedly precluded any claim based on the theory that a cigarette manufacturer should have included warnings beyond those required by the statute. *See id.* at 524–25, 112 S.Ct. 2608. The Sixth Circuit reached a similar conclusion in *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230, 232–35 (6th Cir.1988) (interpreting the 1965 Act).

Crucially, however, both *Cipollone* and *Roysdon* preempt only claims arising during the period covered by federal legislation. While *Roysdon* covered claims brought during the time of the 1965 Act, the Supreme Court's decision in *Cipollone* clearly limited any preclusive effect on state law to the period covered by the 1969 Act. *See Cipollone*, 505 U.S. at 518–21, 112 S.Ct. 2608. The *Cipollone* Court explained that the 1965 Act contained a very narrow preemption clause directed at governmental regulators, not at state common law. According to *Cipollone*, only the 1969 Act precludes state common law claims by private plaintiffs. *See id.* at 520–24, 112 S.Ct. 2608. Thus, federal law bars only those claims arising after the July 1, 1969, effective date of the 1969 Act. *See* 15 U.S.C. § 1334 (note on effective dates). As Hill

explains, *Cipollone* does not block her failure to warn claim to the extent it alleges conduct occurring before the 1969 Act.

Another limitation further constrains the potential sweep of preemption. Both *Cipollone* and *Roysdon* prohibit failure to warn related claims, not all other theories. *See id.* at 524–30; *Roysdon*, 849 F.2d at 232–35. Thus, *Cipollone* bars fraudulent concealment to the extent such a claim alleges neutralization of warnings or non-disclosure of information in cigarette advertising or promotion. *See* 505 U.S. at 524–29, 112 S.Ct. 2608. However, the *Cipollone* Court expressly stated that preemption did not apply to other fraudulent non-disclosure claims and to claims based on deception. *Cipollone*, 505 U.S. at 527–30, 112 S.Ct. 2608. The Court held that the 1969 Act did not preempt fraud and conspiracy to commit fraud claims. *See id.*

■ Under *Cipollone*'s holding, Hill's complaint fails only where it asserts, based on conduct occurring in 1969 and later, claims of failure to warn under strict liability; where it might assert that Reynolds undermined, or neutralized, its federally-mandated warnings with other statements; and where it might assert claims of fraudulent concealment in cigarette advertising or promotional materials. Any other non-failure-to-warn strict liability claims remain intact. Similarly, Hill's affirmative fraud and conspiracy claims remain undisturbed by *Cipollone*.

## II.

Under the familiar strict liability standard of the Restatement (Second) Torts, § 402A, a plaintiff must show that a product is in a "defective condition unreasonably dangerous to the user or consumer." The common knowledge doctrine rests upon the sensible premise that a product is not unreasonably dangerous if everyone knows of its inherent dangers. This concept is expressed most clearly in Comment i to § 402A, which explicitly refers to tobacco:

> ***Unreasonably dangerous.*** The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.... The article sold must be dangerous to an extent beyond what would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.... Good tobacco is not unreasonably dangerous because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous....

The consumer knowledge concept takes a slightly different form in the Restatement's definition of "defective condition." As Comment g to § 402A explains, a defective condition exists when the product is "in a condition not contemplated by the ultimate consumer." In the defective condition context, however, the idea is usually referred to as the "consumer expectation test." Despite the different names, the two doctrines appear to provide a defense based on the same premise: inherent and well-known dangers in a product should not trigger liability.

According to Reynolds, the common knowledge doctrine entirely defeats Hill's strict liability claims. To support this argument, Reynolds cites an impressive looking list of cases.[1] Leading the pack is *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230 (6th Cir.1988), in which the Sixth Circuit applied Tennessee law.[2] Beyond

---

1. These cases have little persuasive value: they arise from jurisdictions other than Kentucky and/or they are not published.

2. The Tennessee statutes explain that "[a] product is 'unreasonably dangerous' if it is 'dangerous to an extent beyond that which could be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.'" *Roysdon*, 849 F.2d at 236 (quoting Tenn.Code.Ann. § 29–28–102(8)). Furthermore, the Tennessee Supreme Court has explained that the state's courts should apply the statutory test by look-

*Roysdon,* Reynolds cites a number of similar decisions under the laws of Michigan, Minnesota, Ohio, and Texas. What Reynolds does not cite is any applicable Kentucky law on this state law question. As a federal court sitting in diversity, this Court must apply Kentucky law. Cases interpreting the law of other states would be helpful only if Kentucky law is unclear.

■ The Court concludes that Kentucky law is clear; though the precise application of it in a given case can be confounding. The Commonwealth's highest court first settled the general role of the common knowledge doctrine in *Nichols v. Union Underwear Co. Inc.,* 602 S.W.2d 429, 432 (Ky.1980). The *Nichols* court explicitly considered and rejected Comment i. In fact, it vetoed the use of public knowledge as an absolute defense to either the "defective condition" prong or the "unreasonably dangerous" prong of the § 402A test. Specifically, *Nichols* renounced Comment i, "patent danger," and "consumer expectations" in favor of a "prudent manufacturer" test for strict liability. *See id.* at 432–33.

The *Nichols* court considered a jury instruction that provided: "A product is 'unreasonably dangerous' only if it is dangerous to an extent beyond that which would be contemplated by an ordinary adult purchaser thereof, with ordinary knowledge as to its inherent characteristics." *Id.* at 432. As the court observed, the instruction was based on Comment i. The court explained that the instruction focused the jury on one issue—the obviousness of the danger—rather than allowing the jury to consider the known dangers of the product along with other factors in determining whether the product was unreasonably dangerous. *See id.* at 433. "In effect, the product cannot be unreasonably dangerous if the omnipresent and elusive 'reasonable man'—ordinary adult—knows about the danger. Under such an instruction, the obviousness of the danger could become the sole determinant of the reasonableness of a danger, rather than simply one of many factors." *Id.* at 432.

The *Nichols* court rejected the consumer knowledge doctrine because the rule placed dispositive weight on public understanding of certain risks while preventing the fact-finder from considering design and safety options available to the manufacturer but not known to the public. In other words, the doctrine would prevent a fact-finder from evaluating whether the manufacturer could ameliorate the presumptively "inherent risks" of a product.

The effect of [a consumer knowledge] instruction is to insulate a product from liability simply because it is patently dangerous, or because it is no more dangerous than would be anticipated by the ordinary person. Some seventeen jurisdictions adhere to [the consumer knowledge] rule, eighteen have repudiated it, and sixteen, including Kentucky, have not addressed the issue. We now join those which have considered and rejected "patent danger" or "consumer expec-

ing to the " 'knowledge of the ordinary consumers of the products.' " *Id.* (quoting *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 692 (Tenn.1984)). Based on Tennessee's adoption of Comment i and the common knowledge doctrine in both its code and common law, the *Roysdon* court concluded that "[t]he extensive information regarding the risks of smoking available to the public [from 1974 onward] precluded the existence of a jury question as to whether cigarettes are unreasonably dangerous." *Id.*

Reynolds suggests the Court should follow the approach taken by *Watkins v. R.J. Reynolds Tobacco Co.,* No. 98–130, at 2–3 (E.D.Ky.

Oct. 14, 1998), a recent unpublished opinion from the Eastern District of Kentucky. The *Watkins* court considered *Roysdon,* and several other cases cited by Reynolds, in reaching the conclusion that the common knowledge doctrine applied under Kentucky law. If this Court were free to write on a blank slate, it might well find *Roysdon* persuasive. Under *Erie,* however, this Court is not permitted to craft federal common law when it sits in diversity. Instead, where Kentucky law is clear, this Court is bound. Kentucky law is clear. *Roysdon* neither governs nor correctly interprets Kentucky law. It seems wrong to suggest that it does either.

tation" as an absolute defense to strict liability for defective design. As Dean Wade, Reporter for the Restatement, Second, Torts, put it:

> In many situations, particularly involving design matters, the consumer would not know what to expect, because he would have no idea how safe the product could be made.

*Id.* (citation omitted). This passage places Kentucky quite clearly in the group of those states which do not allow consumer knowledge to act as an absolute legal defense.

*Nichols* explained that Kentucky holds a manufacturer liable when it markets a product that an ordinarily prudent company, fully aware of the relevant risk, would not have put into the stream of commerce. *See id.* at 433. As the court explained, the strict liability inquiry "is to be made from the perspective of a prudent manufacturer of similar products fully apprised of the condition and tendencies of the product when he put it into the stream of commerce." *Id.* (internal quotation marks omitted).

The Court sees nothing in the jurisprudence since *Nichols* to indicate that Ken-

tucky courts have disavowed this view. In fact, when the Kentucky Supreme Court decided *Montgomery Elevator Co. v. McCullough,* 676 S.W.2d 776 (Ky.1984), it began by reflecting upon *Nichols* in a passage that alleviates any doubt whatsoever:

> In *Nichols,* we arrived at a simple standard for the trier of fact to use to apply the words in § 402A. The manufacturer is *presumed to know* the qualities and characteristics, and the actual condition, of the his product at the time he sells it, and the question is whether the product creates such a risk of an accident of the general nature of the one in question that an ordinary prudent company engaged in the manufacture of such a product would not have put it on the market.

*Id.* at 780. Certainly after *Montgomery Elevator,* it is beyond cavil that Kentucky's law of strict liability does not allow the consumer knowledge doctrine to operate as a complete legal defense.[3] Instead, the essential logic of the prudent manufacturer test is the idea that liability depends on the conduct of the company rather than the knowledge of the consumer.[4]

---

**3.** A cursory reading of *Byler v. Scripto–Tokai Corp.,* Nos. 90–6112 & 90–6113, 1991 WL 181749, at *3–4 (6th Cir. Sept.17, 1991), might lead one to think that the Sixth Circuit has construed Kentucky law as permitting the application of the consumer knowledge doctrine. Instead of stating that the consumer knowledge doctrine acts as an absolute defense, *Byler* provides subtle guidance about the factual circumstances in which the obviousness of a danger should decide a case upon a motion for summary judgment or directed verdict. *Byler* concerned a fatal fire caused by a child playing with a disposable lighter. The Sixth Circuit affirmed summary judgment for the lighter manufacturer. The court discussed the possibility of alternate lighter designs, but emphasized the issue of inadequate adult supervision. *See id.* 1991 WL 181749 at *4. After explaining the prudent manufacturer test and the various factors involved, the court stated that a single factor might be so important that it allowed judgment as a matter of law: "[A] court need not require a jury to consider those factors in cases where a single named element was im-

portant enough to absolve a manufacturer from liability as a matter of law." *Id.* at *3. The *Byler* court indicated the importance of factual development in determining whether a single factor is dispositive: a trial court should "*examine the facts of each case before it,* and then declare a product not to be 'unreasonably dangerous' as a matter of law *only if the facts show* a type of obvious and unavoidable danger...." *Id.* (emphasis added). Often, as in *Byler,* the most important issue is not the fault of the manufacturer but the fault of the plaintiff. And, not infrequently, one of the important considerations in establishing plaintiff fault is the lack of care in the face of an obvious danger. However, that is a far cry from concluding that Kentucky courts have adopted the consumer knowledge doctrine as an absolute defense in products cases. The Court finds nothing in Kentucky law to support such a conclusion.

**4.** Based on *Nichols* and *Montgomery Elevator,* Kentucky law would seem to provide one cause of action for product liability. The prudent manufacturing test would seem to ad-

Does this mean that the obvious and well-known risks of a product play no role in a Kentucky products liability action? Clearly not. A manufacturer's decision to market a certain product should depend on a host of factors including what consumers know about it. For example, consumer knowledge would seem to dramatically affect a manufacturer's decisions about the content of any warnings. As *Montgomery Elevator* explained:

> Considerations such as feasibility of making a safer product, patency of the danger, warnings and instructions, subsequent maintenance and repair, misuse, and the products' inherently unsafe characteristics, while they have a bearing on the question as to whether the product was manufactured "in a defective condition unreasonably dangerous," are all factors bearing on the principal question rather than separate legal questions. In a particular case, as with any question of substantial factor or intervening cause, they may be decisive.

*Id.* at 780–81; *see also Smith v. Louis Berkman Co.*, 894 F.Supp. 1084 (W.D.Ky. 1995) ("factors include deviation from industry standards, obviousness of the danger, consumer knowledge, weighing of risks against benefits, feasibility of making a safer product, subsequent maintenance and repair, misuse, the products' inherently unsafe characteristics, and other factors, depending on what is relevant in each particular cause of action").

Notwithstanding the clear import of *Montgomery Elevator*, one must ask whether the obvious danger of cigarettes is decisive in this case now. The answer lies in the proper role of consumer knowledge as part of the multifactor test described above and in the procedural posture of this case. Even if the Court took judicial notice of the inherent danger of cigarettes, these two considerations prevent it from granting a motion to dismiss. In Kentucky, consumer knowledge does not necessarily constitute an absolute defense to a products liability action. *See Nichols*, 602 S.W.2d at 432. Similarly, in *Montgomery Elevator* the Kentucky Supreme Court reframed the same idea by explaining that inherent danger is not a separate question, but merely a factor for consideration.

The Court must assume all of Hill's allegations to be true. Among other things, Hill alleges that Reynolds manipulated nicotine levels and rejected safer alternate cigarette designs; Hill contends that no prudent manufacturer would have placed a product as unhealthful and addictive as cigarettes into the stream of commerce; and Hill argues that no prudent manufacturer would view the benefits of cigarette smoking as outweighing the risks inherent in the design of cigarettes. These allegations create a powerful tension with the claim that consumers knew they were buying a dangerous product. Without factual development, the Court certainly cannot conclude that the balance so

dress all the various theories, including manufacturing defect, design defect, and failure to warn. This simple and elegant structure may not reflect all the complexities of Kentucky's jurisprudence. Recently, in *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247 (Ky.1995), the Kentucky Supreme Court explained that, "[i]n a products liability case, a plaintiff may recover in a number of ways such as under a theory of defective design, defective manufacture or failure to warn." *Id.* at 251. The *Clark* court stated that "[e]ach theory is different and therefore independent of each other." *Id.* at 250. *Clark* held that jury instructions must allow a plaintiff to recover under each theory rather than requiring a plaintiff to prove, for

instance, a design defect *and* a failure to warn simultaneously. As the court explained, "[a] plaintiff need only prove one" of the theories supported by the evidence. *Id.* at 251. The Court does not read *Clark* to have modified the prudent manufacturer test. Instead, the decision merely suggests that a jury might reach a different conclusion depending on whether it focuses on: (a) whether a prudent manufacturer would have placed the product on the market with the warning given; or (b) whether a prudent manufacturer would have placed the product on the market as designed. Obviously, the plaintiff would win regardless of whether the jury found liability under (a), or (b), or both.

decisively favors defendant that dismissal is appropriate.

Despite Kentucky's general rejection of the common knowledge doctrine as an absolute defense to all strict liability claims, the concept still has considerable significance in this case. While *Nichols* directly rejected consumer knowledge as a defense to a design defect claim, several other cases support the proposition that Kentucky law unequivocally provides that a manufacturer has no duty to warn of well-known or obvious dangers.[5] *See Hutt v. Gibson Fiber Glass Prods., Inc.*, 914 F.2d 790, 793 (6th Cir.1990) ("The general rule, however, is that there is no duty to warn the user of a product when the user is aware of the product's danger."); *Jordan v. Massey–Ferguson, Inc.*, No. 95–5861, 1996 WL 662874, at *4 (6th Cir. Nov.12, 1996) (same); *Smith v. Louis Berkman Co.*, 894 F.Supp. 1084, 1092 (W.D.Ky.1995) (rejecting a continuing duty to warn argument because the danger was obvious and unchanged from when the product was manufactured and sold); *McCabe Powers Body Co. v. Sharp*, 594 S.W.2d 592, 594 (Ky.1980) (stating that warnings are "ordinarily not required when the danger or potential danger is generally known and recognized and is within common knowl-

edge and understanding"); *Cravens v. Brown & Williamson Tobacco Corp.*, No. 98–CI–1007, at I (Ky.Cir.Ct., Jefferson County, May 26, 1998) ("Under Kentucky law the defendants have no duty to warn of the health hazards associated with smoking.").

■ Before the Court could apply the common knowledge doctrine as a defense to failure to warn and dismiss Hill's claim, it would need to take judicial notice of the public's past understanding of the risks of smoking.[6] Assuming the continuing validity of *Roysdon* 's decision in 1988 to take judicial notice of the status of common knowledge from 1974 onward, the Court would need to resolve the question of common knowledge in the preceding years. Whether people knew the relevant risks between 1969 and 1974 is rendered moot by the preemptive effect of the 1969 Act. Thus, the judicial notice inquiry would focus on the state of popular consciousness concerning cigarettes before 1969. The Court is simply unwilling to take judicial notice of something as intangible as public knowledge over three decades in the past. The exercise seems inherently speculative and an inappropriate topic for judicial notice.[7]

---

**5.** The Restatement (Second) of Torts, Comment j, recognizes the importance of consumer knowledge in the context of a failure to warn claim. Comment j provides guidance on the adequacy of warnings and states that "a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so . . . when the danger, or potentiality of danger, is generally know and recognized." *See Forster v. R.J. Reynolds Tobacco Co.*, No. 85–4294, at 7 (Minn.Dist.Ct., Hennepin County, Feb. 13, 1990) (applying a general knowledge test under Minnesota law, based on Comment j, for failure to warn claims).

**6.** Reynolds cites a number of cases in which courts have taken judicial notice that the public possessed common knowledge of the risks of smoking during the 1960s and earlier. *See, e.g., Jones v. American Tobacco Co.*, 17 F.Supp.2d 706, 716–18 (N.D.Ohio 1998) (common knowledge in 1966); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F.Supp. 228, 230–

31 (N.D.Ohio 1993) (common knowledge in 1966); *Lonkowski v. R.J. Reynolds Tobacco Co.*, No. 96–1192, 1996 WL 888182, at *7 & n. 13 (W.D.La. Dec.10, 1996) (citing a 1953 drop in per capita cigarette consumption following a number of magazine articles proclaiming the dangers of smoking as evidence of widespread knowledge as early as 1952); *Forster v. R.J. Reynolds Tobacco Co.*, No. 85–4294, at 4–7 (Minn.Dist.Ct., Hennepin County, Feb. 13, 1990) (common knowledge in the 1950s); *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 172 (5th Cir.1996) (common knowledge in 1936).

**7.** Several sources support the Court's position that the application of the common knowledge doctrine as a defense to a failure to warn claim covering the 1950s and 1960s involves a question of fact. For instance, the Third Circuit has stated, although without analysis, that a trial court commits no error when it treats common knowledge of the risks of smoking as a fact question. *See Cipollone v.*

Whether the origins of applying the common knowledge doctrine lie in notions of duty, plaintiff fault,[8] or superseding cause, the result is clear: The plaintiff's knowledge of a danger (whether actual, presumed from the obviousness of the danger, or presumed from common knowledge) may eliminate the need for a warning from the manufacturer. At this early stage in the litigation, however, it is not dispositive. For all of these reasons, the Court must deny Reynolds' motion for summary judgment on Hill's failure to warn claim for the period of time prior to 1969. After seeing more of the evidence, the Court will be in a position to reach its own conclusion as have some other courts. Thus, even though the Court refrains from adopting Comment i of § 402A, no one should think we have seen the last of the broad concept as an important issue in this case.

### III.

In addition to raising the common knowledge doctrine as a defense to strict liability, Reynolds contends that the concept defeats Hill's fraud claim. This line of argument asserts that Hill could never prove reasonable reliance on any misrepresentation about the safety of cigarettes against the backdrop of the commonly known risks of smoking. Some courts have accepted this argument and have dismissed smokers' fraud claims. *See Cook v. Tobacco Inst.*, No. 5:97 CV 656, at 6–7 (N.D.Ohio Feb. 26, 1999); *Watkins v. R.J. Reynolds Tobacco Co.*, No. 98–130, at 3 (E.D.Ky. Oct. 14, 1998); *Worthington v. R.J. Reynolds Tobacco*, No. C2–97–261, at 8–9 (S.D.Ohio Sept.30, 1998); *Forster v. R.J. Reynolds Tobacco Co.*, No. 85–4294, at 4–7 (Minn.Dist.Ct., Hennepin County, Feb. 13, 1990). *But see Jones v. American Tobacco Co.*, 17 F.Supp.2d 706, 720–21 (N.D.Ohio 1998). Without discounting the very real possibility that the absence of reasonable reliance may result in summary judgment as to some or even all of Plaintiff's fraudulent misrepresentation claim, the Court has good reasons for denying the motion to dismiss now.

Reynolds asks the Court to apply the common knowledge doctrine as an absolute defense to a Kentucky fraud claim despite Kentucky's rejection of the doctrine under strict liability. Given Kentucky's position on the common knowledge doctrine in its traditional role, the Court concludes that it is wrong to graft the doctrine onto fraud law without some authority from the Kentucky courts. Thus, the Court finds Reyn-

---

*Liggett Group, Inc.*, 893 F.2d 541, 560 (3d Cir.1990), *rev'd in part on other grounds*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Indeed, in *Tompkin v. American Brands, Inc.*, 10 F.Supp.2d 895 (N.D.Ohio 1998), the court took exactly that approach, denying a motion to dismiss in part because of factual questions regarding the application of the common knowledge doctrine. *See Jones v. American Tobacco Co.*, 17 F.Supp.2d 706, 717 (N.D.Ohio 1998) (explaining the ruling in *Tompkin*). Eventually, the *Tompkin* court decided that the public possessed common knowledge of lung cancer risks as early as 1950; but in order to reach that decision the court examined conflicting testimony from several experts. *See Tompkin v. American Brands, Inc.*, 10 F.Supp.2d 895, 905 (N.D.Ohio 1998). Similarly, at least two state courts hearing smokers' suits have concluded that the extent of common knowledge in a failure to warn case poses a question of fact. *See, e.g., Gilboy v. American Tobacco Co.*, 582 So.2d 1263, 1265–66 (La.1991); *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1052–55 (Ind.Ct.App.1990) (also distinguishing between general health risks and addictiveness).

**8.** Unfortunately, Kentucky law is in disarray on exactly how plaintiff fault works in a strict products liability case. Either plaintiff fault constitutes an absolute defense under the Kentucky's Product Liability Act, *see* Ky.Rev. Stat.Ann. § 411.320(3), or plaintiff fault amounts to a question under the comparative fault statute, *see* Ky.Rev.Stat.Ann. § 411.182. *See Parrish v. Owens–Corning Fiberglas Corp.*, Nos. 97–CA–2417–MR & 96–CA–2419–MR, 1998 WL 375960, at *3–5 (Ky.Ct.App. July 2, 1998) (describing the conflict between several decisions holding that the comparative fault statute repealed 411.320, in whole or in part, and a recent decision holding that 411.320 still applied in some contexts).

olds' suggested approach inappropriate at this stage of the litigation.

 While the common knowledge doctrine in some jurisdictions may operate as a definitional defense to a strict liability claim, it plays no similar role in a fraud context. Actionable fraud occurs when the defendant makes a materially false statement with the intent to induce reliance by the plaintiff who justifiably and detrimentally relies upon the statement. *See Miller's Bottled Gas, Inc. v. Borg–Warner Corp.*, 955 F.2d 1043, 1051 (6th Cir.1992). Common knowledge provides no definitional defense to the tort. Common knowledge relates to fraud, if at all, by undermining proof of justified reliance upon misinformation. It would seem, therefore, that a fact-finder should examine the extent of common knowledge in comparison to the alleged convincingness of the misrepresentation. Even common knowledge does not automatically negate the justifiability of reliance; it just introduces a powerful argument against reasonableness. In other words, the Court concludes that common knowledge as a defense to fraud is more properly argued upon a motion for summary judgment. The evidence may be such that a court could resolve the conflict at that time.

### IV.

 Reynolds also seeks dismissal of Hill's fraud claim on the grounds that the amended complaint fails to state fraud with particularity as required by Rule 9(b). Several courts have dismissed smokers' fraud claims on this basis. *See Barnes v. Philip Morris, Inc.*, No. 9–106, at 7–8 (E.D.Ky. Mar. 24, 1999) (dismissing a fraud claim without prejudice); *Cook v. Tobacco Inst.*, No. 5:97 CV 656, at 5–6 (N.D.Ohio Feb. 26, 1999); *Amendola v. R.J. Reynolds Tobacco Co.*, No. 4:98 CV 01150, at *6–9 (N.D.Ohio Nov. 19, 1998); *Watkins v. R.J. Reynolds Tobacco Co.*, No. 98–130, at 3 (E.D.Ky. Oct. 14, 1998). Instead of dismissing, other courts have allowed plaintiffs to cure any deficiencies.

*See Witherspoon v. Philip Morris Inc.*, 964 F.Supp. 455, 460–61 (D.D.C.1997); *cf. Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1524 (D.Kan.1995). Here, the amended complaint contains many allegations of statements, articles, or advertisements published by Reynolds or the alleged co-conspirators. The Court notes especially the allegations in paragraphs 36 and 84–106. While these allegations list the year of the statement, they do not contain the month and day. Furthermore, some of the allegations refer in general terms to the content of the publication rather than quoting any substantial portion.

Nevertheless, the Court believes that several of the allegations provide sufficient detail to satisfy the requirements of Rule 9. The amended complaint contains quotations from statements made by Reynolds, or the alleged co-conspirators, that either contain the alleged misinformation or demonstrate the alleged omissions. The complaint contains the year and title of these statements. Therefore, the Court prefers to handle any limited problems by directing Reynolds to the option afforded by Rule 12(e) of a motion for a more definite statement. If Reynolds is unfamiliar with certain statements, it should request, for instance, the exact date of the statement and the source in which it appeared.

The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Defendant has moved to dismiss Plaintiff's complaint. The Court will treat the motion as one to dismiss the Amended Complaint as well. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion to File Amended Complaint is SUSTAINED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is SUSTAINED, in part, and DENIED, in part. Plaintiff's claims of failure to warn based

on conduct occurring after July 1, 1969, are DISMISSED WITH PREJUDICE. Plaintiff's other claims shall remain until further evaluation.