NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0032n.06

No. 16-5437

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

DARCY YONTS,                                    )
                                                )
    Plaintiff-Appellant,                        )
                                                )
NORTH AMERICAN STAINLESS,                       )
                                                )
    Intervenor,                                 )
                                                )
v.                                              )
                                                )
EASTON TECHNICAL PRODUCTS, INC.,                )
                                                )
    Defendant-Appellee.                         )
                                                )
                                                )

```
┌─────────────────────────────┐
│          FILED              │
│       Jan 13, 2017          │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

BEFORE:    NORRIS, GIBBONS, and ROGERS, Circuit Judges.

    ROGERS, Circuit Judge.  A second-hand carbon fiber arrow manufactured by Easton Technical Products broke and impaled the webbing of Darcy Yonts's hand after he drew and released the arrow from his bow. Yonts sued Easton over the incident for strict and negligent products liability, breach of warranty, and a violation of Kentucky's Consumer Protection Act. His primary contention was based on the manufacturer's allegedly inadequate warning of the danger. Yonts had seen a warning that was on the arrow itself, which referred to a website with more extensive warnings. After excluding Yonts's proffered expert testimony, the district court granted summary judgment in favor of Easton on all of Yonts's claims, which he now appeals.

The district court did not abuse its discretion by excluding the expert testimony, and Easton was entitled to summary judgment on each of Yonts's substantive claims.

I.

The incident at issue in this case occurred about a year after Yonts began practicing archery. On August 26, 2010, Yonts was target-shooting with Easton-manufactured carbon fiber arrows in the yard with his son. Upon drawing and releasing one of the arrows, it broke and impaled Yonts's left hand. Yonts had previously purchased the arrow in question second-hand from a friend.

Because Yonts did not receive the arrow in its original packaging, the only warning message he had access to was on the arrow's shaft. The on-arrow message stated: "SEE WARNINGS & USE at www.bsafe.ws or 877-INFO-ETP." Yonts admitted in response to Easton's interrogatories that he was "aware of the information" on the arrow before the incident occurred. He also stated in his deposition that he "noticed" and "s[aw] the warning on the arrow before the incident." The website reads, and the phone line states:

> WARNING FOLLOW THESE INSTRUCTIONS TO AVOID PERSONAL INJURY. SEE WARNINGS AND USE @ www.bsafe.ws or 877-INFO-ETP
>
> **Warnings and Use**
>
> ARROW BREAKAGE
> An arrow shaft can become damaged from impacts with hard objects or other arrows, or after being shot into a game animal. A damaged arrow could break upon release and injure you or a bystander. You must carefully inspect each arrow shaft, nock and other components before each shot to see that they have not been damaged. Before shooting, place the arrow between your thumb and fingers, and using your other hand to slowly rotate the shaft, run your fingertips along the entire arrow length, feeling and looking closely for nicks, cracks, splits, dents, or other marks that could indicate the shaft has been damaged. When checking carbon arrows, perform the following additional tests:
>
> > 1. Grasp the shaft just above the point and below the nock, then flex the arrow in an arc (bending it away from you and others)

> with a deflection of 1 to 2 inches (2.5 to 5 cm), and listen for cracking noises. Perform this test four to six times, rotating the arrow slightly between each flex until you have gone around the entire arrow. If you hear or feel cracking, the carbon has been damaged.

> 2. While still holding the point and fletching ends, twist the shaft in both directions. If the arrow "relaxes" or twists easily, the carbon has been damaged.

> If an arrow has been damaged, or if you believe it has been damaged, do not shoot it again, as it could break on release, and sharp arrow pieces could hit and injure you or someone nearby.

Despite being aware of the on-arrow message, Yonts never followed the URL or called the phone number. So he never read or heard this warning.

Yonts sued Easton over the incident, alleging strict and negligent products liability—including design-defect, manufacturing-defect, and failure-to-warn theories—breach of express and implied warranty, and a violation of Kentucky's Consumer Protection Act (KCPA). During discovery, Yonts asked Easton to produce information related to "each incident . . . in which someone reportedly was injured in any manner by an arrow manufactured, distributed or sold by your company." Easton objected to the request as overly broad and supplied only information for incidents that occurred between 2005 and 2012 and involved the same type of shaft that caused Yonts's injury, which included two product lines. Yonts then filed a motion to compel Easton to provide incident reports for all fifty of its carbon-arrow product lines, which the district court denied.

By the time the case reached the summary judgment stage, Yonts conceded that he had no expert testimony to support his manufacturing- and design-defect theories, and the district court dismissed those claims accordingly. That left only a failure-to-warn theory of strict and

negligent products liability.  In support of his failure-to-warn claims, Yonts offered four opinions

from human-factors expert Dr. Carol Pollack-Nelson:

1.  It is reasonable and foreseeable that a consumer will not notice the on-arrow "warning message" as it is entirely inconspicuous, particularly in contrast to other messages found on the Arrow.

2.  Easton's website instructions were important but not adequate to effectively communicate the message to the user.

3.  Easton should have made efforts to mitigate the arrow breakage hazard in the design of its arrows.  Because Easton relies entirely on warnings and instructions to mitigate this hazard, it was imperative that Easton monitor and measure consumer awareness, understanding, and compliance with warning messages and make adjustments to the communication scheme, as necessary.

4.  The content of the on-arrow message fails to adequately alert users to the hazard and draw them to the website.  Mr. Yont's [sic] failure to pursue the warning referred to on the Arrow by going to the website or the toll-free number was reasonable and foreseeable.

*Yonts v. Easton Technical Prods., Inc.*, No. 3:11-cv-535-DJH, 2015 WL 3408937, at *4 (W.D.

Ky. May 27, 2015) (alteration in original).  A fifteen-page report accompanied Pollack-Nelson's

opinions.

Pursuant to Easton's Rule 702 and *Daubert* challenge, the district court rejected each of

Pollack-Nelson's opinions as inadmissible.  The court reasoned that the first two opinions are

irrelevant to Yonts's failure-to-warn claims, *id.*; Pollack-Nelson is not qualified to give the third,

*id.* at *5; and the fourth is unreliable, *id.*  Having left no expert testimony to support Yonts's

failure-to-warn theory, the district court granted Easton summary judgment on Yonts's

remaining strict and negligent products liability claims.  *See id.* at 6.  The court reasoned:

"[Yonts] offers no evidence to support his conclusion that the Arrow was 'unreasonably' and

'inherently dangerous.' . . .  Yonts says the warnings were inadequate, but he has no evidence of

a dangerous condition that required a warning in the first place. . . .  Moreover, Yonts offers no

causation evidence." *Id.* at *5–6. The district court also granted summary judgment to Easton on Yonts's breach of warranty and KCPA claims, reasoning that second-hand purchasers may not sue a product's manufacturer under either cause of action.

Yonts now appeals the district court's decision to exclude Pollack-Nelson's expert testimony and to grant summary judgment in favor of Easton on his strict and negligent products liability, breach of express warranty, and KCPA claims. Yonts also challenges the district court's dismissing his motion to compel and rejecting his claim to punitive damages.

## II. Expert Testimony

The district court did not abuse its discretion by excluding Dr. Pollack-Nelson's expert opinions. This court overturns a district court's evidentiary ruling only when no reasonable court could agree with the district court's decision. *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 101 (6th Cir. 1989). Here, after finding that Yonts "saw and read" the on-arrow message, the district court reasonably concluded that the first expert opinion—stating that the on-arrow message is "entirely inconspicuous"—is irrelevant to Yonts's claims. Given that the current on-arrow message was enough to attract Yonts's attention, a bolder, flashier statement would not have made a difference.

The district court was also reasonable in deciding that the second expert opinion—concluding that Easton's website instructions are inadequate—is irrelevant. Yonts's failure-to-warn claims begin and end with the on-arrow message. If Yonts proves that the on-arrow message is inadequate—either because the text is inconspicuous or because the message fails to convey the urgency necessary to motivate users to visit the website or call the phone number—and that inadequacy caused his failure to visit the website or call the number, his claim succeeds. The analysis has nothing to do with the website's warning. On the other hand, if the on-arrow

message is adequate, or if the message's inadequacy did not cause Yonts's failure to visit the website or call the number, the claim fails regardless of whether the website message is effective. In that case, Yonts's own indifference prevented him from visiting the website, so its content does not matter. Either way, the website and phone message is irrelevant, so the district court did not abuse its discretion when it held that Pollack-Nelson's second opinion makes no difference to Yonts's case.

Furthermore, the district court reasonably concluded that Pollack-Nelson is not qualified to give her third expert opinion—that Easton should have taken other steps to make its carbon arrows safe. Pollack-Nelson describes her role as a human-factors expert as follows: "I look at product designs and talk to [clients] about hazards that the product presents and the best way of dealing with that. So, whether that's through an engineering design fix which I would then pass off to an engineer, the warnings, the instructions; I talk about warning effectiveness, consumer perception of warnings." Pollack-Nelson may be qualified to testify about how the arrow's warning interacts with the product's overall safety. However, a large portion of her third opinion focuses on Easton's failure to pursue engineering modifications, such as a protective covering on the arrow's shaft. But Pollack-Nelson admits she is not qualified to give any opinion on the feasibility of such design alternatives. Furthermore, Pollack-Nelson never investigated, outside of deposition testimony, Easton's efforts to make its carbon arrows safe. It is misleading to put so much weight on potential design alternatives when there is no evidence that feasible alternatives exist and minimal evidence that Easton has not pursued any. Given this shaky basis for Pollack-Nelson's third opinion, it was not an abuse of discretion for the district court to reject it as inadmissible.

Finally, the district court reasonably concluded that Pollack-Nelson's fourth opinion—stating that the on-arrow message "fails to adequately alert users to the hazard and draw them to the website"—is inadmissible. Under Kentucky products liability law, a warning is adequate if it conveys the product's underlying risk to a reasonable consumer. *Post v. Am. Cleaning Equip. Corp.*, 437 S.W.2d 516, 520 (Ky. Ct. App. 1968). In turn, determining whether a particular warning sufficiently conveys the product's underlying danger requires examining the likelihood and seriousness of the risk involved. *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 16 (Ky. Ct. App. 2003). It follows, then, that to comment on a warning's effectiveness, an expert must put the warning in context with a thorough understanding of the underlying risk.

The problem with Pollack-Nelson's fourth opinion is that she attempts to comment on the adequacy of the on-arrow message, and goes further to say what changes should be made to the message, with no qualifications or background knowledge to comment on the nature of the risk carbon fiber arrows pose. She is not an engineering expert, and she has never claimed to have any technical knowledge about carbon fiber arrows or the material itself. Furthermore, Pollack-Nelson's only attempt to learn about the hazard, which she describes as the "potential for the arrow to sort of forcefully shatter and puncture the hand," involved informal interviews with archery retailers over the phone and employees at a Dick's Sporting Goods location. Pollack-Nelson's opinions about certain warning characteristics being more effective than others—e.g., pictograms are bolder than text—may be reliable in the *Daubert* sense, because she uses peer-reviewed literature to support them. However, she has no reliable basis for connecting the form of the on-arrow message with its adequacy to convey to a reasonable user an understanding of the underlying risk. Pollack-Nelson's fourth opinion therefore would not help a jury understand

the on-arrow message's adequacy, and the district court did not abuse its discretion by excluding it.

## III. Summary Judgment

Easton was entitled to summary judgment on Yonts's strict liability and negligent failure-to-warn claims, because there is not enough evidence in the record of an unreasonably dangerous condition to create a question of fact for the jury. Kentucky follows the Second Restatement of Torts approach to products liability, which requires a "defective condition unreasonably dangerous" to impose liability. *Montgomery Elevator Co. v. McCullough*, 676 S.W.2d 776, 780 (Ky. 1984). For strict liability, proving an unreasonably dangerous condition is enough; the doctrine presumes that the manufacturer knows about the condition. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). For negligence, the plaintiff must also prove that the manufacturer could "foresee the harm" and did not "act reasonably to prevent" it. *Id.* Whether the product adequately warns consumers of an inherent danger is a "factor[] bearing on the principal question" of whether the product is unreasonably dangerous "rather than [a] separate legal question[]." *Id.* at 780–81. An inadequate warning, alone, is not enough to make a product unreasonably dangerous; there must be some dangerous condition to warn about in the first place. The district court held that Yonts's failure-to-warn claims failed because he had "no evidence of [such] a dangerous condition." *Yonts*, 2015 WL 3408937, at *5.

Yonts wrongly tries to recast the district court's reasoning as confusing the defective-design and failure-to-warn theories of products liability. He cites *Clark v. Hauck Manufacturing Co.*, 910 S.W.2d 247 (Ky. 1995), *overruled on other grounds by Martin v. Ohio County Hospital Corp.*, 295 S.W.3d 104 (Ky. 2009), and *Shea v. Bombardier Recreational Products, Inc.*, No. 2011-CA-000999-MR, 2012 WL 4839527 (Ky. Ct. App. Oct. 12, 2012), in support. Neither case

supports his position, however. In *Clark*, the Kentucky Supreme Court rejected a jury instruction that required the jury to find both a defective design and an inadequate warning to sustain a strict products liability claim. *See* 910 S.W.2d at 250–51. Nothing in the court's holding or reasoning suggests, however, that a consumer does not have to prove an underlying danger to support her products liability action. *Shea* is also unhelpful to Yonts's position. In *Shea*, the Kentucky Court of Appeals approved of a jury instruction that described failure-to-warn strict liability: "As marketed and distributed by Defendant . . . the [product] was unreasonably dangerous, without reasonable notice or warning of danger, and the owner's manual or labeling of the [product] was not reasonably adequate to warn an ordinary prudent person that she might be injured." 2012 WL 4839527, at *3. This instruction explains that a manufacturer can be liable if its product lacks an adequate warning of *danger*. Again, *Shea* reinforces that a successful failure-to-warn claim requires an underlying dangerous condition. The district court therefore did not err by reasoning that the arrow must have such a condition before the adequacy of the arrow's warning even becomes relevant to Yonts's failure-to-warn theory.

Without evidence connecting the carbon arrow's propensity to break with the effectiveness of Easton's on-arrow message, there is not enough evidence of a "defective condition unreasonably dangerous" for Yonts's failure-to-warn claims to survive summary judgment. Easton acknowledges several times in the record that worn or misused carbon fiber arrows can break and cause injury. Arguably this evidence of the arrow's propensity to break is enough to show an underlying dangerous condition, which the district court found missing. However, Yonts's failure-to-warn claims still fail, because there is no evidence in the record about what warning is required to alert the reasonable user to this risk. As discussed above, Dr.

Pollack-Nelson is not qualified to opine on the seriousness and likelihood of the risk, and no other record evidence purports to do so. Easton was therefore entitled to summary judgment on Yonts's failure-to-warn theory.

Easton was also entitled to summary judgment on Yonts's breach of express warranty and KCPA claims, because Yonts was not in a contractual relationship with Easton. Under Kentucky Revised Statutes § 355.2-318, express warranties only extend "to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods." Ky. Rev. Stat. Ann. § 355.2-318 (LexisNexis 2008). The Kentucky Supreme Court has interpreted this provision to mean what it says; only the original purchaser and the members of her household mentioned in the statute may maintain a cause of action for breach of warranty. *Williams v. Fulmer*, 695 S.W.2d 411, 414 (Ky. 1985). Similarly under the KCPA, "a subsequent purchaser may not maintain an action against a seller with whom he did not deal." *Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992); *see* Ky. Rev. Stat. Ann. § 367.220. It is undisputed that Yonts is not the original purchaser of the Easton arrow that injured him; he bought the arrow second-hand. Therefore, under Kentucky law, Yonts does not have a cause of action against Easton for breach of express warranty or under the KCPA.

The two cases Yonts relies on for the proposition that consumers do not have to be in privity with the manufacturer to sue the manufacturer for these claims are unpersuasive and distinguishable. The first is *Levin v. Trex Co., Inc.*, No. 3:10-cv-692-CRS, 2012 WL 7832713 (W.D. Ky. Mar. 5, 2012). In *Levin*, a consumer sued the manufacturer of a particular decking material, which the consumer had purchased through a retailer, alleging breach of express warranty. The warranty at issue stated that it ran to the "'individual residential homeowner'

purchasing the product." *Id.* at *2. The federal district court held that, while Kentucky law normally requires buyer–seller privity to maintain a cause of action for breach of warranty, the Kentucky Supreme Court would give the consumer standing in the case because the "express limited warranty was intended to benefit the residential homeowners and not the distributors who sold [the] product." *Id.* at *4. In the second case, *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013), the same court expanded this rationale to include scenarios where the "express warranties were clearly intended for the product's consumers," even if the warranties did not "expressly state that they run directly to the intended consumers." *Id.* at 739–40.

Yonts's case is factually distinguishable from *Levin* and *Naiser*. In *Levin* and *Naiser*, the consumer purchased the defective product directly from a retailer; there was only one middleman. In contrast, because Yonts purchased the Easton arrow second-hand, at least one other consumer separates him from any retailer or distributor, let alone the actual manufacturer. If a consumer so far removed from the manufacturer could claim express-warranty or KCPA protection, §§ 355.2-318's and 367.220's limitations would be meaningless. Thus, the rationale of *Levin* and *Naiser* does not apply to Yonts's breach of warranty and KCPA claims, and Easton was entitled to summary judgment on both.

## IV. Motion to Compel

Finally, the district court did not abuse its discretion by denying Yonts's motion to compel production of the accident history for all of Easton's carbon-arrow product lines. The standard of review of the district court's decision is highly deferential; "the trial judge's decision is to be given 'great latitude.'" *Rye*, 889 F.2d at 102. While Yonts asserts that incident reports from all of Easton's carbon-arrow product lines could have been relevant—given all carbon arrows' propensity to break and Easton's uniform warning—Yonts has not shown that it was

unreasonable for the district court to limit discovery to two product lines. The district court could have easily determined that requiring Easton to come forward with information for each of its fifty carbon-arrow lines would have been overly burdensome and unnecessary in light of the information Easton had already given. Such a determination is within the sound discretion of the district court.

## V. Punitive Damages

Because Yonts has no successful cause of action to entitle him to punitive damages, this court has no occasion to reach the merits of his argument that his case warrants punitive damages.

## VI.

The judgment of the district court is affirmed.