1995) (unpublished) (holding that conspiracy claim fails when underlying tort claim fails).

### CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
*Pursuant to Sixth Circuit Rule 206*

ELECTRONIC CITATION:  2000 FED App. 0293P (6th Cir.)
File Name:  00a0293p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOHN J. GLASSNER, Executor
for the Estate of Ella J.
Glassner, deceased,
            *Plaintiff-Appellant,*

            *v.*

R. J. REYNOLDS TOBACCO
COMPANY; PHILIP MORRIS,
INC.,
            *Defendants-Appellees.*

No. 99-3952

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-00796—David D. Dowd, Jr., District Judge.

Argued:  June 23, 2000

Decided and Filed:  August 31, 2000

Before:  KEITH, MERRITT, and COLE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Peter D. Janos, PERANTINIDES & NOLAN, CO., Akron, Ohio, for Appellant. Jeffrey J. Jones, JONES, DAY, REAVIS & POGUE, Columbus, Ohio, for Appellees. **ON BRIEF:** Peter D. Janos, Chris T. Nolan, PERANTINIDES & NOLAN, CO., Akron, Ohio, for Appellant. Jeffrey J. Jones, JONES, DAY, REAVIS & POGUE, Columbus, Ohio, Robert C. Weber, Dennis L. Murphy, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, Mary M. Bittence, Diane P. Chapman, BAKER & HOSTETLER, Cleveland, Ohio, Thomas J. Frederick, Matthias A. Lydon, Julie Soloway, Joseph J. Zaknoen, WINSTON & STRAWN, Chicago, Illinois, for Appellees.

---

### OPINION

---

R. GUY COLE, JR., Circuit Judge. Plaintiff-Appellant John J. Glassner, individually and as executor for the estate of Ella J. Glassner, appeals the district court's decision dismissing his wrongful death action against Defendants-Appellees R. J. Reynolds Tobacco Co. and Philip Morris, Inc., ("Defendants")[1] for failure to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6). Glassner's eight-count Complaint originally was filed in the Summit County Court of Common Pleas and subsequently was removed to the United States District Court for the Northern District of Ohio based upon diversity jurisdiction; it alleges the following: Fraud/Deceit (Count I); Conspiracy (Count II); Negligence (Count III); Strict Liability (Count IV); Negligent Misrepresentation (Count V); Consumer Fraud

---

[1]The Complaint also named "John Doe Corporations I through X," but these entities have not been identified.

Because Glassner has failed to allege facts sufficient to support a finding that his decedent relied on Defendants' alleged misrepresentations, he has failed to plead, particularly or otherwise, the reliance element required to state a common law fraud claim under Ohio law.

### B. Proximate Injury

Even if Glassner could establish that his decedent justifiably relied on Defendants' alleged misrepresentations and concealment of its extra knowledge concerning the dangers of cigarette smoking, he has pled no facts to support a finding of "a resulting injury proximately caused by the reliance." *See Burr*, 491 N.E.2d at 1105. Glassner's fraud claims, unlike his OPLA claims, are based on Defendants' misrepresentations and concealment not of information concerning the general health risks associated with smoking, *i.e.*, those risks that are common knowledge, but of information beyond the common knowledge of the ordinary person, *i.e.*, the manipulation of nicotine levels in cigarettes. Thus, Glassner must plead facts sufficient to support a finding that his decedent was injured not merely by one of those smoking-related diseases commonly known to the ordinary person, but as a proximate result of her reliance on Defendants' misrepresentations and concealment of information beyond the common knowledge of the ordinary person. He has failed to do so.

### IV. Conspiracy

Because the district court properly dismissed Glassner's substantive claims, his claim for conspiracy must fail. *See NPF IV, Inc., v. Transitional Health Servs.*, 922 F. Supp. 77, 83 (S.D. Ohio 1996) ("Conspiracy in and of itself does not normally establish a basis for recovery in a civil action in Ohio; rather, there must be an actionable wrong committed as a result of the conspiracy.") (citation omitted); *Akins v. Zeneca, Inc.*, 1995 WL 452087, at *3-*4 (6th Cir. July 27,

jurisdictions may operate as a definitional defense to a strict liability claim, it plays no similar role in the fraud context.").[4]

The district court's reasoning that common knowledge, as a matter of law, makes any reliance non-justifiable for purposes of common law fraud is flawed: common knowledge of one thing, *i.e.*, the general health risks associated with smoking, is by no means common knowledge of another, *i.e.*, the manipulation of nicotine levels in its products. Here, Glassner's fraud claim is based on allegations that Defendants misrepresented and concealed extra knowledge, beyond common knowledge, concerning the dangers of smoking. Although we recognize that common knowledge does not always vitiate the justifiability of reliance alleged in claims of fraud, Glassner nevertheless has failed to state a claim for common law fraud as a matter of law.

Glassner has alleged no facts whatsoever that would support a finding that his decedent relied on Defendants' alleged misrepresentations and concealment. *See Tompkin*, 10 F. Supp. 2d at 909 (dismissing widow's common law fraud claim because she could not establish that the decedent smoked because he relied on the defendant's misrepresentations), *rev'd in part on other grounds*, __ F.3d __, 2000 WL 1022693 (6th Cir. 2000). As the district court noted:

It would border on speculation for a jury to try to ascertain what, if any, information plaintiff's decedent accepted or rejected; what, if any, of that information plaintiff's decedent relied upon in making her decision to smoke. Arguably, plaintiff could testify as to his understanding of his wife's knowledge and/or reliance; however, this would be, at best, second-hand evidence and, at worst, hearsay.

---

[4] *Amendola* did not address the common law fraud claim any further except to dismiss it based on a failure to plead the allegation with particularity pursuant to Fed. R. Civ. P. 9(b).

(Count VI); Malicious Conduct (Count VII); and Survivorship (Count VIII). Glassner appeals the district court's decision, assigning error to the court's determination that (1) the Ohio Product Liability Act ("OPLA"), OHIO REV. CODE §§ 2307.71-2307.79, bars his claims for negligence, strict liability, negligent misrepresentation, and malicious conduct (Counts III, IV, V, and VII) based upon the "common knowledge" doctrine; (2) Ohio law bars his common law fraud claim (Count I) on the ground that, because the health risks associated with smoking are common knowledge, any reliance on Defendants' alleged misrepresentations or concealment of those risks is not justifiable; and (3) because his common law fraud claim fails as a matter of law, his derivative conspiracy claim (Count II) also must fail. Glassner does not appeal the district court's dismissal of his consumer fraud and survivorship claims (Counts VI and VIII), and therefore, those issues are not before us.

For the reasons that follow, we AFFIRM the decision of the district court.

## BACKGROUND

Plaintiff's decedent, Ella J. Glassner, began smoking Defendants' tobacco products in 1969. The Complaint alleges that "[a]s a direct and proximate result of decedent's reliance on Defendants' misrepresentations, omissions and concealments, the Plaintiff's decedent, Ella Glassner, age 67, died on March 8, 1997." Although the Complaint does not indicate Ella Glassner's cause of death, it alleges that Defendants knew their tobacco products caused various smoking-related diseases and sought to "mislead, confuse, and conceal from the public the true dangers associated with smoking cigarettes." Glassner alleges that Defendants "engaged in an ongoing conspiracy to actively misrepresent, omit and conceal the truth about nicotine in order to sustain the addictions of existing cigarette smokers and to hook thousands of new smokers every day, including Plaintiff's decedent . . . . Not only did the Tobacco Industry know,

misrepresent, omit, and conceal that nicotine is an addictive drug, Plaintiff and other cigarette consumers are informed and believe that the Tobacco Industry . . . manipulates and controls the levels of nicotine in these products to create and sustain the addiction."

## DISCUSSION

We review de novo a district court's dismissal for failure to state a claim upon which relief can be granted. *See Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations and citation omitted).

> We must treat as true all of the well-pleaded allegations of the complaint. All allegations must be construed in the light most favorable to the plaintiff. In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegations of the complaint.

*Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996) (citations omitted). Furthermore, under Rule 9(b) of the Federal Rules of Civil Procedure, a complaint alleging fraud must allege with particularity those circumstances constituting fraud. *See VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 701 (6th Cir. 2000).

When federal jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332, as is the case here, we are bound by the substantive law of the state in which the action originally was brought. *See Erie R.R. v. Tomkins*, 304 U.S. 64, 78 (1938). Neither party disputes the district court's determination that OPLA governs Glassner's claims of negligence, strict liability, negligent misrepresentation, and

*Burr v. Board of County Comm'rs of Stark Co.*, 491 N.E.2d 1101, 1105 (1986) (quotation marks and citations omitted). A duty to disclose and corresponding liability for failure to disclose arises when:

> the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the non-disclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.

*Jones*, 17 F. Supp. 2d at 719 (quoting *Miles v. McSwegin*, 388 N.E.2d 1367, 1369 (1979)).

## A. Justifiable Reliance

Here, the district court focused on the "justifiable reliance" element required to prove common law fraud, holding that even if Glassner could prove reliance on the part of the decedent, Plaintiff could not prove that reliance was justifiable in light of the fact that health risks associated with smoking were common knowledge. We do not agree. Although common knowledge may relate to fraud by way of undermining proof that reliance on a material misrepresentation was justified, it is not an absolute defense; we must look to the particular information within the common knowledge of the ordinary person and to the specific allegations of misrepresentations or concealment. *See Amendola*, 198 F.3d 244, 1999 WL 1111515, at *3 ("[C]ommon knowledge is not necessarily a defense to [a common law fraud] claim, especially where, as here, there are allegations that Reynolds manipulated nicotine levels and knowingly concealed adverse research results."); *Hill v. R. J. Reynolds Tobacco Co.*, 44 F. Supp. 2d 837, 846 (W.D. Ky. 1999) ("While the common knowledge doctrine in some

existed a widespread public awareness of the health risks associated with smoking such that we must impute this "common knowledge" to her and presume that she was aware of and assumed those risks. Because Glassner's OPLA claims not preempted by the Labeling Act nevertheless are barred by the common knowledge doctrine, the district court properly dismissed those claims pursuant to Fed. R. Civ. P. 12(b)(6).

### III. Common Law Fraud

Glassner's common law fraud claim goes beyond his OPLA claims in that he asserts that Defendants had extra knowledge concerning the harmful effects of smoking, such as the addictive nature of nicotine and the manipulation of nicotine levels in cigarettes, that they withheld that information despite a duty to disclose it, and that they in fact made material misrepresentations about cigarettes knowing such statements to be false. Glassner further alleges that the decedent relied on Defendants' misrepresentations and concealment and was damaged as a result.

To prove a claim for common law fraud under Ohio law, a plaintiff must prove:

(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and

(f) a resulting injury proximately caused by the reliance.

malicious conduct (Counts III, IV, V, VII). Further, neither party disputes that Glassner's fraud/deceit claim (Count I) is governed by Ohio common law. Before we address the question of whether Glassner stated a claim upon which relief can be granted under either OPLA or Ohio common law, however, it is necessary to consider whether any or all of Glassner's claims are preempted by federal law.

### I. Preemption

In 1965, Congress enacted the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 et seq., which became effective on January 1, 1966. Section 4 of the Act mandated that all cigarettes sold or distributed in the United States have a warning on the package stating: "CAUTION: CIGARETTE SMOKING MAY BE HAZARDOUS TO YOUR HEALTH." 15 U.S.C. § 1333 (1965). Section 5 of the Labeling Act was captioned, "Preemption" and stated:

(a) No statement relating to smoking and health, other than the statement required by section 4 of this Act, shall be required on any cigarette package.

(b) No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.

15 U.S.C. § 1334 (1965).

The Public Health Cigarette Smoking Act of 1969, which became effective on July 1, 1969, amended the 1965 Act and called for stronger warning labels on cigarette packages, requiring that from then on, the warning had to state that smoking is dangerous to one's health rather than simply stating that smoking may be hazardous. *See* 15 U.S.C. § 1333 (1969). The 1969 Act also modified the preemption provision of the 1965 Act by amending § 5(b) to read as follows:

No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

15 U.S.C. § 1334(b) (1969).

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) (plurality opinion), the Supreme Court addressed the scope of both the 1965 and 1969 Act insofar as they preempted various state law damages claims. In *Cipollone*, the plaintiff asserted that the defendant cigarette manufacturers were responsible for the death of his mother, a long-time smoker. The plaintiff alleged that defendants breached express warranties contained in their advertising, failed to warn consumers about smoking's hazards, fraudulently misrepresented those hazards to consumers, and conspired to deprive the public of medical and scientific information about smoking, all in derogation of duties under New Jersey law. *See id.* at 508. The question before the *Cipollone* Court was whether the 1969 Act, or its 1965 predecessor, preempted plaintiff's common law claims against the defendants.

*Cippolone* held that the preemptive scope of each Act was governed entirely by the express language contained in Section 5. The Court determined that because each Act contained a provision defining the scope of the preemptory effect of that Act, those provisions must be construed narrowly and matters beyond their reach were not preempted. *See id.* at 517. The Court concluded that Section 5 of the 1965 Act did not preempt state law damages actions. *See id.* at 518-20. However, in analyzing the 1969 Act, the Court found that the broad language of Section 5(b), as amended, extended the Act's preemptive reach to include some, but not all, common law damages actions. *See id.* at 520-21. Ultimately, the Court found it necessary to look beyond the labels attached to plaintiff's common law claims and, instead,

decedent began smoking in 1969 and continued to smoke up until her death in 1997. Accordingly, we hold that the common knowledge doctrine bars Glassner's OPLA claims as a matter of law.

We recently affirmed a similar case dismissed on a 12(b)(6) motion where the complaint alleged, among other things, negligent misrepresentation and intentional infliction of emotional distress under OPLA. *See Amendola v. R. J. Reynolds Tobacco Co.*, 198 F.3d 244, 1999 WL 1111515 (6th Cir. Nov. 24, 1999) (unpublished). In *Amendola*, the plaintiff began smoking in 1958, well before Congress mandated any warning labels on cigarette packages, and continued to smoke until 1998, well after cigarette warning labels made the health risks associated with smoking common knowledge. Focusing not on the point at which the plaintiff began smoking, but rather, the point at which she quit smoking, we held that the plaintiff's OPLA claims were barred as a matter of law by the common knowledge doctrine. *See id.* at *2-*3.

Not only did the *Amendola* Court rely on *Roysdon*, it also found support in *Jones v. American Tobacco Co.*, 17 F. Supp. 2d 706, 718 (N.D. Ohio 1998), a consolidated action based on OPLA claims of strict liability, negligence, fraud not based on common law, and breach of warranty. In *Jones*, one plaintiff began smoking in 1954 and quit in 1990, and the other plaintiff began smoking in 1968 and continued to smoke through the disposition of the case. The district court held that because both plaintiffs continued to smoke after 1966, when warning labels first were placed on cigarette packages, their claims were barred as a matter of law pursuant to the common knowledge doctrine. *See id.* at 718.

We find the reasoning on this point to be sound. Not only did Glassner's decedent begin smoking well after the 1965 Act mandated warning labels on cigarette packages, she continued to smoke even after the 1969 Act strengthened those warnings. Thus, we find that from the time Ella Glassner began smoking up until the time of her death, there

nicotine levels and their campaign to resurrect a "smoking controversy" that information does not negate the public's long held knowledge that cigarettes are (and were) dangerous to health.

*Id.* The court recognized that the plaintiff and her decedent began smoking in 1968 and 1971, respectively, well after the Labeling Act became effective on January 1, 1966, stating, "the case law is well settled that the health hazards of smoking were within the ordinary citizen's 'common knowledge'" by the time the plaintiffs began smoking. *Id.*

In *Tompkin*, we emphasized that because the plaintiffs alleged that defendants' products proximately caused Mr. Tompkin's lung cancer, the common knowledge inquiry must be narrowed to the question of whether the link between cigarette smoking and lung cancer was common knowledge, not simply whether the link between cigarette smoking and general health maladies was common knowledge. *See Tompkin,* __ F.3d at __, 2000 WL 1022693 at *6. Here, Glassner does not allege any specific illness or injury caused by Defendants' products; he alleges simply that smoking cigarettes is hazardous to one's health and that his decedent was harmed as a result of smoking. Thus, we limit our common knowledge inquiry to the question of whether the link between cigarette smoking and general health risks was common knowledge during the relevant time period. Based upon *Roysdon* and *Tompkin*, it is clear that the point at which the common knowledge doctrine serves to bar recovery under OPLA falls somewhere between the periods of 1950 to 1965 (*Tompkin*) and 1974 to 1984 (*Roysdon*). *See Tompkin,* __ F.3d at __, 2000 WL 1022693, at *7-*9 (whether common knowledge existed prior to 1965, the date the plaintiff's decedent quit smoking, created a question for the jury in light of the fact that Congress had yet to enact the Labeling Act); *Roysdon*, 849 F.2d at 232, 236 (common knowledge between 1974 and 1984 was sufficient to bar plaintiff's claims, despite the fact that plaintiff began smoking in 1946, twenty years before the Labeling Act went into effect). Here, Glassner's

to evaluate each claim to determine whether it was in fact preempted by the 1969 Act. *See id.* at 523.

*Cippolone* recognized that in order to decide whether any claim is preempted, a court must first determine "whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." *Id.* at 523-24 (quoting 15 U.S.C. § 1334(b)). The Court then analyzed the preemptive effect of the 1969 Act on each of plaintiff's claims, concluding that plaintiff's failure-to-warn claims were preempted to the extent that they relied on a state law "requirement or prohibition . . . with respect to . . . advertising or promotion." *See id.* at 524. Thus, the Court held that insofar as claims under a failure-to-warn theory required a showing that the cigarette manufacturers' post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims were preempted. *See id.* However, the Court held that the Act did not preempt plaintiff's claims that relied on testing or research practices or other actions unrelated to advertising or promotion. *See id.* at 524-25. The Court also noted, for example, that § 5(b) would not preempt state law obligations to avoid product liability claims arising from manufacturing or design defects. *See id.* at 523.

*Cippolone* next analyzed the plaintiff's fraudulent misrepresentation claims, the first of which was predicated on a state law prohibition against advertising and promotional statements tending to minimize smoking's health hazards. That claim alleged that the manufacturers' advertising neutralized the effect of the federally mandated warning labels. The Court held that such a fraud claim was preempted because it was inextricably linked to the plaintiff's failure-to-warn theory. *See id.* at 527-28. However, the Court found that the plaintiff's second fraudulent misrepresentation theory, which alleged false representation and concealment of material facts, was not preempted insofar as those allegations

relied on a state law duty to disclose material facts through channels of communication other than advertising and promotions. *See id.* at 528. Moreover, the Court held that fraud claims based on deceptive advertising also are not preempted because "[s]uch claims are predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528-29 (quoting 15 U.S.C. § 1334(b)).

In holding that the 1969 Act did not preempt all common law fraud claims, the *Cippolone* Court reasoned:

> Congress intended the phrase "relating to smoking and health" (which was essentially unchanged by the 1969 Act) to be construed narrowly, so as not to proscribe the regulation of deceptive advertising. Moreover, this reading of "based on smoking and health" is wholly consistent with the purposes of the 1969 Act. State-law prohibitions on false statements of material fact do not create "diverse, nonuniform, and confusing" standards. Unlike state-law obligations concerning the warning necessary to render a product "reasonably safe," state-law proscriptions on intentional fraud rely only on a single, uniform standard: falsity. Thus, we conclude that the phrase "based on smoking and health" fairly but narrowly construed does not encompass the more general duty not to make fraudulent statements. Accordingly, petitioner's claim based on allegedly fraudulent statements made in respondents' advertisements is not pre-empted by § 5(b) of the 1969 Act.

*Id.* at 529 (footnote omitted).

Applying the plurality opinion in *Cippolone* to the Complaint in the present case is no easy task, as Glassner does not appear to have made any effort whatsoever to limit his claims to those allowed under *Cippolone*. Based upon our interpretation of *Cipollone*, however, we find that the Labeling Act does not preempt all of Glassner's OPLA

OPLA, codified the common knowledge doctrine.[3] Citing the district court's judicial notice that "tobacco has been used for over 400 years and that its characteristics have also been fully explored," the *Roysdon* Court addressed the extent of the public's knowledge of the dangers of smoking between 1974 and 1984, the ten-year period immediately preceding the commencement of the suit. *See id.* at 232, 236. We held that plaintiffs' claims were barred because "[k]nowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community." *See id.* at 236 (citing *Roysdon v. R.J. Reynolds Tobacco Co.*, 623 F. Supp. 1189, 1192 (E.D. Tenn. 1985)).

Glassner attempts to distinguish *Roysdon* based on the 1994 Waxman Hearings, where the tobacco industry's knowledge that tobacco is addictive and its manipulation of nicotine levels in cigarettes came to light during a congressional hearing chaired by Congressman Waxman of the Subcommittee on Health and the Environment of the House Energy and Commerce Committee. In *Hollar v. Philip Morris, Inc.*, 43 F. Supp. 2d 794 (N.D. Ohio 1998), the plaintiff similarly attempted to distinguish *Roysdon* on the ground that it was decided before the Waxman Hearings, arguing that the hearings illuminated "the conspiracy to defraud the American public engaged in by the Defendants." *Id.* at 807. The *Hollar* Court properly declined to accept the plaintiff's reasoning, stating:

> While more information may be available about Defendants' allegedly "intentional manipulation" of

---

[3] The Tennessee products liability statute relevant in *Roysdon* stated that an "unreasonably dangerous" product is one that is:

> dangerous to an extent beyond that which could be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics.

TENN. CODE ANN. § 29-28-102(8).

health risks that are common to ordinary knowledge"); *Gawloski v. Miller Brewing Co.*, 96 Ohio App. 3d 160, 163, 644 N.E.2d 731 (1994) (holding that there is no duty under Ohio law to protect against "dangers [that] are generally known and recognized by the ordinary consumer").

In *Tompkin*, we recently reversed the district court's grant of summary judgment in favor of the defendant tobacco companies, holding that whether the dangers of smoking were common knowledge between 1950 and 1965 presented a question for the jury. *See Tompkin*, __ F.3d at __, 2000 WL 1022693, at *7. In *Tompkin*, the plaintiff brought OPLA claims of design defect, failure-to-warn, strict liability, and misrepresentation both individually and on behalf of the decedent smoker, who had smoked the defendants' tobacco products from 1950 to 1965. The plaintiff's decedent was diagnosed with lung cancer in 1992 and died in 1996. The district court denied the defendants' 12(b)(6) motion and, instead, conducted an extensive factual inquiry into the commonly known health risks of smoking. *See Tompkin*, 10 F. Supp. 2d 895 (N.D. Ohio 1998). After examining the expert testimony offered by both parties, the district court ultimately determined that plaintiff's OPLA claims were barred by the common knowledge doctrine, holding that "a reasonable fact finder could not fail to conclude that the health risks from smoking, particularly the risk of lung cancer, was 'common knowledge' in 1950." *See id.* at 905. We reversed the district court in part, holding that because the plaintiff's decedent both began and quit smoking before the enactment of any Labeling Act, "a rational factfinder could reasonably conclude that the public did not have 'common knowledge' of the strong connection between cigarette smoking and lung cancer between 1950 and 1965." *Tompkin*, __ F.3d at __, 2000 WL 1022693, at *9.

In our earlier decision in *Roysdon v. R. J. Reynolds Tobacco Co.*, 849 F.2d 230, 236 (6th Cir. 1988), we affirmed the dismissal of a claim brought by a smoker and his wife under a Tennessee products liability statute, which, like

claims, which seem to be based upon both failure-to-warn and design defect theories. To the extent that Glassner alleges failure-to-warn claims based upon some duty owed by Defendants to issue additional or more clearly stated warnings on cigarette packages, his OPLA claims are preempted. Glassner's failure-to-warn claims that do not rely on a state law "requirement or prohibition . . . with respect to . . . advertising or promotion," as well as his claims based upon design defect, however, are not preempted by the Labeling Act.

With regard to his allegations of common law fraud, Glassner does not bother to delineate the bases for his claims, again making it difficult to determine whether preemption applies. Glassner alleges that Defendants "conducted an aggressive marketing and advertising campaign intended to induce foreseeable users to purchase its tobacco product. Such advertising occurred in print media, on television, radio, on billboards and by other means." Glassner also alleges that Defendants misled the public about the hazards of smoking through channels other than advertising and promotion, such as newspaper and magazine articles, press releases, and congressional testimony. Thus, we find that Glassner's claims of fraud based upon fraudulent misrepresentation and concealment are preempted to the extent that they are predicated on a duty to issue additional or clearer warnings through advertising and promotion. However, we find that Glassner's fraud claims premised on a general "duty not to deceive" rather than a "duty based on smoking and health" are not preempted by the Act.[2]

---

[2] Although Glassner's Complaint is far from clear with respect to the particular facts he alleges in support of his allegations against Defendants, it seems that Glassner alleges fraud based upon acts committed by Defendants both before and after 1969. We note that *Cippolone* does not block Glassner's fraud claim to the extent that it is based upon conduct occurring before 1969. *Cippolone* instructs that the 1965 Act contained a very narrow preemption clause directed at governmental regulators, not state common law, and that only the 1969 Act precludes certain state

Having addressed the question of preemption with regard to Glassner's state law damages claims, we will address in turn those claims not preempted by the Labeling Act and the propriety of dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Ohio Product Liability Act

Under OPLA, a "product liability claim" is defined as:

a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product involved, that allegedly arose from any of the following:

(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(2) Any warning or instruction, or lack of warning or instruction, associated with that product;

(3) Any failure of that product to conform to any relevant representation or warranty.

OHIO REV. CODE § 2307.71(M). OPLA claims brought under a theory of design defect are governed by § 2307.75(E) of the statute, which provides:

A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or

------

common law claims by private plaintiffs. *See Cippolone*, 505 U.S. at 519-20.

desirability and which is *recognized by the ordinary person with the ordinary knowledge common to the community*.

OHIO REV. CODE § 2307.75(E) (emphasis added).  OPLA claims brought under a failure-to-warn theory are governed by § 2307.75(B), which states:

A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is *a matter of common knowledge*.

OHIO REV. CODE § 2307.76(B) (emphasis added). Defendants argue that based upon these provisions, liability under OPLA is barred because the inherent risks of smoking are a matter of common knowledge.

### A. Common Knowledge Doctrine

This bar to recovery has come to be known as the "common knowledge" doctrine. *See Tompkin v. American Brands*, __ F.3d __, __, 2000 WL 1022693, at *6 (6th Cir. 2000) ("OPLA expressly exempts from liability products whose dangers are regarded as 'common knowledge.'"); *Amendola v. R. J. Reynolds Tobacco Co.*, 198 F.3d 244, 1999 WL 1111515, at *3 (6th Cir. Nov. 24, 1999) (unpublished) (holding that plaintiff's OPLA claim was barred by the common knowledge doctrine); *Consumers of Ohio v. Brown & Williamson Tobacco Corp.*, 52 F.3d 325, 1995 WL 234620, at *1 (6th Cir. April 19, 1995) (unpublished) (affirming 12(b)(6) dismissal of OPLA claims, stating, "The extensive information that is now available regarding smoking tobacco precludes a jury question as to whether the risks involved are known by the average consumer."); *Paugh v. R. J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 231 (N.D. Ohio 1993) (dismissing fraud, failure-to-warn, negligence, and defective design claims under 12(b)(6) based on finding that "users of tobacco products have made a consumer choice in the face of