Donna HOGUE, Plaintiff,

v.

PFIZER, INC., et al., Defendants.

Case No. 2:10–cv–805.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 27, 2012.

Robert Craig McLaughlin, Elk & Elk Co., Ltd., Mayfield Heights, OH, Daniel J. McGlynn, Terrence J. Donahue, Jr., McGlynn & Glisson, APLC, Baton Rouge, LA, William B. Curtis, Curtis Law Group, Dallas, TX, for Plaintiff.

Charna E. Sherman, Law Offices of Charna E. Sherman, Cleveland, OH, Quentin F. Urquhart, Irwin Fritchie Urquhart & Moore LLC, New Orleans, LA, Andrew J. Calica, Henninger S. Bullock, Joel S. Richard, Mayer Brown, LLP, New York, NY, Brian M. Lucot, Marks, O'Neill, O'Brien & Courtney, PC, Pittsburgh, PA, Richard A. Oetheimer, Sarah K. Frederick, Goodwin Procter LLP, Boston, MA, Rex A. Littrell, Ulmer & Berne, Columbus, OH, Lisa Marlo Kuhnell, Ulmer & Berne LLP, Robert W. Hojnoski, Reminger Co., LPA, Cincinnati, OH, for Defendants.

## OPINION AND ORDER

MICHAEL H. WATSON, District Judge.

Plaintiff in this diversity action asserts several product liability claims under Ohio law, arguing her ingestion of a prescription drug, metoclopramide, caused her to develop a neurological system disorder known as tardive dyskinesia. The Defendants that manufacture the brand-name version of metoclopramide ("Brand Defendants"), move for summary judgment on the ground that Plaintiff never ingested brand-name metoclopramide; rather, she ingested only the generic version of metoclopramide. ECF Nos. 70 and 72. For the following reasons, the Court grants the Brand Defendants' summary judgment motions.

## I. BACKGROUND

### A. The Parties

Plaintiff Donna Hogue is an individual resident and citizen of Ohio. The Brand Defendants Schwartz Pharma, n/k/a UCB, Inc. ("Schwartz"), Pfizer, Inc. ("Pfizer"), and Wyeth LLC ("Wyeth") manufactured Reglan®, the brand-name version of metoclopramide. The parties stipulate Ms. Hogue never ingested Reglan®; rather, she ingested only the generic version of metoclopramide, which the Brand Defendants did not manufacture.

In late 2000, Ms. Hogue's physician prescribed Reglan® to treat Ms. Hogue's abdominal pain and digestive problems. Ms. Hogue then began to take generic metoclopramide and continued to do so until about August 2009. By March 2009, Ms. Hogue was exhibiting abnormal movements which she avers were caused by her ingestion of metoclopramide. She specifically asserts her ingestion of metoclopramide caused her to develop tardive dyskinesia, a neurological movement disorder.

Metoclopramide is intended for short term treatment of gastroesophageal reflux and recurrent diabetic gastric stasis. Short term means twelve weeks or less. Patients taking metoclopramide for longer periods face an increased risk they will develop tardive dyskinesia. The thrust of Ms. Hogue's claims is that despite mounting evidence, the Brand Defendants failed to warn doctors and patients of the degree of risk associated with long term ingestion of metoclopramide.

Ms. Hogue filed this action on September 9, 2010, asserting the following claims under Ohio law: (1) negligence; (2) strict liability; (3) breach of warranties; (4) misrepresentation and fraud; (5) negligence per se; and (6) gross negligence.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Petty v. Metro. Gov't of Nashville–Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir.2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir.2006). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves*, 530 U.S. at 150–51, 120 S.Ct. 2097. Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir.2009).

Thus, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505).

## III. DISCUSSION

The Brand Defendants advance essentially two grounds for summary judgment. First, the Brand Defendants argue they are entitled to summary judgment because the Ohio Product Liability Act ("OPLA" or "Act") requires a plaintiff to prove the defendant manufactured *the* product that caused her injuries. Hence, the Brand Manufacturers contend that because they did not manufacture the generic metoclopramide Ms. Hogue ingested, Ms. Hogue's claims against them fail as a matter of law. Second, the Brand Manufacturers maintain that even if the OPLA does not govern this matter, the result is the same under Ohio common law.

Ms. Hogue argues that the Brand Defendants are subject to liability for the dissemination of false information regardless of whether they manufactured the actual pills she ingested. In addition, Ms. Hogue maintains the law upon which the Brand Defendants rely is no longer controlling in light of *PLIVA v. Mensing*, ––– U.S. –––, 131 S.Ct. 2567, 180 L.Ed.2d 580 (2011). Moreover, Ms. Hogue asserts the Brand Defendants may be held liable as the innovators and primary manufacturers of metoclopramide.

At the outset, the Court notes the parties in this diversity action agree that Ohio law governs this matter. Choice of law principles confirm their agreement given Ms. Hogue's alleged injuries occurred in Ohio. *See Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 917 (N.D.Ohio 2009).

■ The Court will first examine the Brand Defendants' argument that the OPLA limits liability to the manufacturer of the actual product that caused the plaintiff's injury. The OPLA expressly "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B); *see also Mitchell v. Proctor & Gamble,* No. 2:09–CV–426, 2010 WL 728222, at *3 (S.D.Ohio Mar. 1, 2010) ("[T]he OPLA eliminated common law product liability causes of action."). The Act defines "product liability claim" as:

a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b) Any warning or instruction, or lack of warning or instruction, associated with that product;

(c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev.Code § 2307.71(A)(13). In addition, under the OPLA, a manufacturer may be held liable only if it "designed, formulated, produced, constructed, created, assembled, or rebuilt *the actual product* that was the cause of harm for which the claimant seeks to recover compensatory damages." Ohio Rev.Code § 2307.73(A)(13) (emphasis added). The Act further provides:

Proof that a manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt *the type of product in question* is not proof that the manu-

facturer designed, formulated, produced, constructed, created, assembled, or rebuilt *the actual defective product* in the product liability claim. A manufacturer may not be held liable in a product liability action based on market share, enterprise, or industrywide liability.

Ohio Rev.Code § 2307.73(C) (emphasis added).

Ms. Hogue does not cite, let alone discuss, the OPLA or the limits it places on her product liability claims. Nonetheless, she ostensibly argues those limits do not apply because Brand Defendants disseminated false and misleading information which gives rise to claims under common law theories of fraud and negligent misrepresentation. Thus, she suggests "it is the information that is at issue, not the actual pill consumed." Pl.'s Resp. PAGEID # 859, ECF No. 76.

The Brand Defendants note that the "information" to which Ms. Hogue refers is about the *product* that allegedly caused her injuries, metoclopramide, and her claim therefore falls within the purview of the OPLA. They also emphasize that in her complaint, Ms. Hogue repeatedly asserts that her ingestion of metoclopramide caused her injuries.

The OPLA abrogates "*all* common law product liability claims or causes of action." Ohio Rev.Code § 2307.71(B) (emphasis added). It broadly defines product liability claims as including those where the alleged injuries arise from the "formulation" of the product or "*[a]ny* warning or instruction, or lack of warning or instruction, associated with that product." Ohio Rev.Code § 2307.71(A)(13)(b) (emphasis added). Ms. Hogue's claims fall within those categories. The substance of her claims is that despite their knowledge of growing evidence, the Brand Defendants failed to warn doctors and patients of the degree of risk associated with long term ingestion of metoclopramide. *See Miles,*

612 F.Supp.2d at 921 ("under Ohio law it is the substance of the claim, not the manner in which it is pleaded, that determines how it is treated").

Nonetheless, courts have reached differing conclusions as to whether the OPLA abrogates claims sounding in fraud and misrepresentation, often with little analysis. *Compare Krumpelbeck v. Breg, Inc.,* 491 Fed.Appx. 713, 721, No. 11–3726, 2012 WL 3241587, at *7 (6th Cir. Aug. 10, 2012) ("Because they were abrogated by the 2005 amendment to the OPLA, as discussed *supra,* the district court properly granted summary judgment on Krumpelbeck's common law claims of breach of express warranty, breach of implied warranty, and negligent misrepresentation and fraud."); *Fulgenzi v. PLIVA,* 867 F.Supp.2d 966, 971–73 (N.D.Ohio 2012) (OPLA abrogated claims of fraud and misrepresentation, constructive fraud, and fraud by concealment concerning harm caused by ingestion of metoclopramide); *In re Heparin Products Liability Litigation,* No. 09HC60186, 2011 WL 3875361, at *3 (N.D.Ohio Sept. 1, 2011) (OPLA abrogates negligent misrepresentation claims); *with Musgrave v. Breg.,* No. 2:09–cv–1029, 2011 WL 3876529, at *10 (S.D.Ohio Sept. 2, 2011) (fraud claims are outside the scope of OPLA's abrogation); *CCB Ohio LLC v. Chemque, Inc.,* 649 F.Supp.2d 757, 763–64 (S.D.Ohio 2009) (same).

In a well reasoned opinion, Judge Graham concluded the OPLA does not necessarily preclude *all* claims of fraud and misrepresentation. *Stratford v. Smith-Kline Beecham Corp.,* No. 2:07–cv–639, 2008 WL 2491965, at *8 (S.D.Ohio June 17, 2008). Specifically, the OPLA does not abrogate fraud claims which are based on a general duty not to actively deceive; however, the OPLA does abrogate fraud claims arising from a duty to warn. *Id.* (citing *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 348–49 (6th Cir.2000)).

*Glassner* illustrates the difference between active deception and failure to warn. *Glassner* was a wrongful death action against tobacco companies. The plaintiff asserted the defendants "sought to 'mislead, confuse, and conceal from the public the true dangers associated with smoking cigarettes,'" and "engaged in an ongoing conspiracy to actively misrepresent, omit and conceal the truth about nicotine in order to sustain the addictions of existing cigarette smokers and to hook thousands of new smokers every day, including Plaintiff's decedent" *Glassner,* 223 F.3d at 346. In determining the extent to which the plaintiff's claims were preempted by the Federal Cigarette Labeling and Advertising Act, the court reasoned:

With regard to his allegations of common law fraud, Glassner does not bother to delineate the bases for his claims, again making it difficult to determine whether preemption applies. Glassner alleges that Defendants "conducted an aggressive marketing and advertising campaign intended to induce foreseeable users to purchase its tobacco product. Such advertising occurred in print media, on television, radio, on billboards and by other means." Glassner also alleges that Defendants misled the public about the hazards of smoking through channels other than advertising and promotion, such as newspaper and magazine articles, press releases, and congressional testimony. Thus, we find that Glassner's claims of fraud based upon fraudulent misrepresentation and concealment are preempted to the extent that they are predicated on a duty to issue additional or clearer warnings through advertising and promotion. However, we find that Glassner's fraud claims premised on a general "duty not to deceive" rather than a "duty based on smoking and health" are not preempted by the Act.

*Glassner,* 223 F.3d at 349. Applying the same distinction in the context of OPLA abrogation, the court in *Stratford* held, in part:

> The Plaintiffs' allegations of fraudulent omission are essentially allegations that GSK failed to properly warn physicians and consumers of the risk associated with taking Paxil during pregnancy. Although the allegations of fraud involving omissions on the part of GSK are sufficiently pled under Rule 9(b), they are preempted by the Ohio Rev.Code § 2307.77 governing the failure to warn.

2008 WL 2491965, at *8. The court determined the OPLA did not abrogate the plaintiff's claims of active fraud, but found the plaintiff failed to plead those claims with particularity. *Id.*

Here, Ms. Hogue's fraud claims are based on a theory of omission and concealment. *See* Pl.'s Compl. PAGEID # 24–25, ECF No. 2. In this regard her fraud claims are substantially the same as those the court found abrogated in *Stratford.* The substance of Ms. Hogue's fraud claim is unmistakably failure to warn. Following the reasoning of *Stratford,* the Court concludes the OPLA abrogates Ms. Hogue's claims for misrepresentation and fraud.

■ Ms. Hogue's remaining two arguments merit little discussion. First, the *Mensing* decision has no bearing whatsoever on the issue whether the Brand Defendants may be held liable under Ohio Product liability law for injuries arising from the ingestion of generic metoclopramide they did not manufacture. Second, the OPLA precludes Ms. Hogue's argument that the Brand Manufacturers are subject to liability as inventors or primary manufacturers of metoclopramide as neither theory is an exception to the rule that a plaintiff must prove her injuries were caused by the actual product the defendant manufactured.[1]

In sum, the OPLA abrogates all of Ms. Hogue's common law claims. Under the OPLA, the Brand Defendants cannot be held liable because it is undisputed they did not manufacture the metoclopramide which Ms. Hogue ingested.[2] The Brand Defendants are therefore entitled to summary judgment in their favor.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** the Brand Defendants' motions for summary judgment. ECF Nos. 70 and 72.

---

1. Specifically, the OPLA makes no exception for a manufacturer that formulated the type of product in question, and expressly precludes liability based on market share:

   > Proof that a manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the type of product in question is not proof that the manufacturer designed, formulated, produced, constructed, created, assembled, or rebuilt the actual defective product in the product liability claim. A manufacturer may not be held liable in a product liability action based on market share, enterprise, or industrywide liability.

   Ohio Rev.Code § 2307.73(C).

2. This conclusion is further supported by the decision of the Sixth Circuit Court of Appeals in *Smith v. Wyeth, Inc.,* 657 F.3d 420, 423 (6th Cir.2011). In *Smith,* the court affirmed the dismissal of the plaintiff's claims against manufacturers of name-brand metoclopramide, including claims of fraud and misrepresentation. *Id.* With respect to the latter, the court observed the Kentucky Product Liability Act applies to " 'all damage claims arising from the use of products, regardless of the theory advanced' " *Id.* (quoting *Monsanto Co. v. Reed,* 950 S.W.2d 811, 814 (Ky.1997)). The court further stated: "As have the majority of courts to address this question, we reject the argument that a name-brand drug manufacturer owes a duty of care to individuals who have never taken the drug actually manufactured by that company." *Id.*

The Clerk shall remove ECF Nos. 70 and 72 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**